ERI P. EVANS, ET ALS., Appellants, against SAMUEL M. FOLSOM, Respondent.

APPEAL FROM THE DISTRICT COURT OF RICE COUNTY.

An agreement made with a pre-emptor concerning land that he was about to pre-empt under the Act of Congress of September 4th, 1841, whereby the parties were to found a town on the land, build mills, &c., &c., and own the town in common, and become the proprietors thereof, would be utterly void, and so tainted with immorality as to render it incapable of becoming the foundation for any rights or equities. It involves a perjury under the pre-emption act.

When a Court of Equity is called upon to aid a party against the operation of the Statute of Frauds, and the acts of one who would take an unjust advantage of it, it scrutinizes the conduct and acts of the party invoking its aid, and demands of him the utmost good faith and fair dealing.

Fraud cannot be predicated of a promise not performed, for the purpose of avoiding a written instrument or bargain of any kind. A false promise to convey land does not taint the proceeding with such fraud as a Court of Equity will relieve against.

Points and authorities of Appellant:

I. There is a palpable want or absence of equity in the case made by the Plaintiff's complaint. The Plaintiff not only fails to make title, but vitiates, both morally and legally, all claim to relief through a court of either law or equity.

1st.—It appears by the complaint that the Plaintiff's claim to the property which he seeks to recover,. originated in and is founded on an arrangement to which he was a party, constituting a fraud upon the pre-emption laws of the United States, perpetrated by a perjury to which the Plaintiff was accessory.

Such agreement was not only void, but vicious, and courts, either of law or equity, never interfere to enforce or relieve against such agreements. *Piatt vs. Oliver*, 1 *McLean's Rep.*, 300; *Creath's Admrs. vs. Sims*, 5 *How. Rep. (S.C., U.S)*, 192; *Westfall vs. Jones*, 23 *Barb. Rep.*, 9; 11 *Wheat. Rep.*, 258; *Cowp. Rep.* 341; *Doug. Rep.*, 696, note; 3 *Cranch Rep.*, 242; *Brown's Legal Maxims*, 325; 1 *Story's Eq. Ju.*, sec. 61; 2 *Greenlf. Ev.*, sec. 111; *Comyn on Contracts*, 66; 1 *Am. Lead. cas.*, 59, and the note thereto, and authorities cited; 2 *Minn. Rep.*, 291; 7 *Blackfd. R.* 66; *Am. Law Reg.*, vol. 6, Nos. 2 and 3, 148; *Roberts on Fraud. and Vol. Conveyances*, ch. 7, p. 641.

2d.—The oral agreement between the Plaintiff and Askin, transferred by Askin to Case, and the oral re-affirmance of such agreement between the Plaintiff and Case, were and are void, by the Statute of Fraud. *Compiled Stat.* 457, *ch.* 45, *sec.* 6; 2 *Story, Eq. Ju., sec.* 754–766.

3d.—The alleged oral agreements between Plaintiff and Askin, and between Plaintiff and Case, were void for uncertainty. The conditions, or extent or limit of the terms to be performed by Plaintiff are not stated. There is not enough stated to show that the Plaintiff would have been liable to an action at law for non-performance, nor is there enough stated to furnish any means by which the Plaintiff's equities (if any he have,) can be ascertained and measured.

To enable Courts of Equity to interfere and enforce the performance of an oral contract for the acquisition of the title to land, the terms must be clear, definite and unequivocal, for such courts will not act upon conjectures. 2 *Story, Eq. Jur., sec.* 764; *Dart on Vend. and Pur.,* 481.

4th.—The Plaintiff is, by his own showing, estopped from denying that Case, at the time of his execution of the bond to Evans, was the absolute and unconditional owner of the *whole* of the premises, and is estopped from alleging any right or equity in the property in his own favor, adverse to Case's title, or his bond to Evans.

The Plaintiff's acceptance of, and action under the power of attorney from Case and wife to him, produces that legal effect, and continues it so long as Plaintiff holds that power unrevoked. It is a general rule that an agent is estopped from disputing the title of his principal, nor can he make himself a party adverse to his principal, or deal with the property which is the subject of the agency. He is the trustee of his principal. *Brown on Actions at Law,* 521, 522; *Smith's Mer. Law,* 148; *Crossky vs. Mills,* 1 *Cowp.; Mee. & Ros.,* 288 (1 *Har. Dig.,* 73); *Culland vs. Sloyer,* 6 *Mee., & Mee.,* 26 (1 *Har. Dig.,* 394); *Dixon vs. Hammond,* 2 *Barn. & Ald.,* 310; *Roberts vs. Ogilby,* 9 *Price R.,* 279; 9 *Ves.,* 234; 8 *Ves.,* 502; 12 *Ves.,* 355; 3 *Bro. C. C.,* 119; 1 *Russ & Mylne,* 53; 1 *Mason's Cir. Ct. Rep.,* 341; *Stone vs. Hayes,* 3 *Denio, Rep.* 575; *Hammond's Law of Prin. and Agt.,* 362.

The assignee or grantee of the principal has the same right to insist upon the application of this rule and doctrine to the agent that the principal himself has. The doctrine and rule cannot be avoided, or its application escaped, by any allegations of any special purposes or qualifications of the power of attorney not expressed in it. It is ill pleading to attempt it, for such allegations could not be permitted to be proved to alter, change, modify or qualify the terms or legal effect of the power.

6th.—It follows from the foregoing propositions that, at the time when the bond was executed and delivered by Case to Evans, Plaintiff had not, at law or equity, any definite or tangible right or interest in the property, not even any such right or interest whatever, that he could have enforced against Case or against Evans, the obligee in the bond.

5th.—After the execution of said bond to Evans, and prior to the execution of the deed by Case and wife to Evans, the Plaintiff, by the deed which he, in the name and as the attorney in fact for Case, executed to Shaw, forfeited every latent equity that he might otherwise have had in the property, and every cause that might otherwise have entitled him to consideration or favor.

7th.—The Plaintiff does not pretend that any force or duress was practiced upon him, but confines his charges to fraud. He makes a general charge of fraud but does not allege any facts sufficient to constitute it. The facts only are to be considered, and the general charge of fraud, unsupported by sufficient facts, must be disregarded. Well established rules of pleading, both at law and in equity, require the facts to be stated. All the established precedents are in accordance with this rule, and such precedents are high authority. See, also, 7 *Hill, Rep.*, 578; 11 *Wend. Rep.*, 386, 402; 2 *Wend. Rep.*, 385; 12 *Barb. Rep.*, 336; 3 *Seld. Re.*, 352; *Bac. Ab. tit Action on the Case, F*; 3 *Mod.*, 261; 1 *Lord Raym.*, 595; 2 *ib.*, 1118; *Doug.* 20; 3 *T. R.*, 56–62; 2 *East R.*, 322, 448; 9 *John. R.*, 453.

Points and Authorities of Respondent.

The pleadings make a clear case to entitle the Plaintiff to the relief asked.

The Plaintiff paid the consideration for the premises and was entitled to the deed of the same.

The Defendant, Evans, obtained the title through fraud, and representations that he was receiving it for the benefit of Plaintiff, the Plaintiff having paid the consideration therefor, and is entitled to the conveyance. The Defendant, Evans, received the title, and held it in trust for the Plaintiff. *Pub. Stat., page* 389, *sec.* 9.

The Defendant, Evans, having obtained a bond from Case for a deed of three-fifths of the town site, and also a deed from Shaw for two-fifths of the mill property through fraud and misrepresentations, and unknown to the Plaintiff, and without his consent, takes that advantage, together with the promise to deed it all over to Folsom the next day, to procure the consent of the Plaintiff that the deed might run in his name.

The consent having been procured through fraud, it is not consent in law. *Vol.* 1, *Hill's Reports, page* 311.

Fraud is any kind of artifice by which another is deceived. The courts have never laid down any fixed definition of fraud, but any cunning artifice, undue influence, &c., intended to defraud and injure another, is fraud. *Willard's Equity Jurisprudence, page* 147; also, *Vol.* 1, *Story's Equity Jurisprudence, page* 212, *sec.* 186. Courts of Equity will not permit the Statute of Frauds to be made an instrument to perpetrate fraud. *Roberts on Frauds, pages* 79, 102, 103. Courts of Equity will go far to relieve against fraud, and extend beyond the jurisdiction of Courts of Law. *Vol.* 1, *Story's Equity Jurisprudence, pages* 209 *and* 211, *secs.* 185–188; *also, page* 215, *sec.* 190.

The object of section 7 of the Statutes of Trusts, *Pub. Stat., page* 382, *chapter* 32, is to prevent secret and fraudulent conveyances of property, with the view of defrauding creditors, and not for the purpose of enabling one person to obtain and keep the property of another without consideration. *Vol.* 20, *Howard's U. S. Supreme Court Reports, page* 558.

That Courts of Equity will decree a trust in the person holding the title in favor of the person paying the considera-

Evans, et als., v. Folsom.

tion when the title was received through fraud. *See Thyn vs. Thyn,* 1st *Vernon's Reports, page* 290; also, *Brown vs. Lynch & Lynch, Vol.* 1, *Paige's Chancery Reports, page* 147; *Wilkin vs. Vanduree,* 1st *Barbour Sup. Court Reports,* 607; *and Brice vs. Brice,* 5 *Barbour, page* 538; *Lounsbury vs. Purdy,* 11 *Barbour, S. C. R., p.* 490.

The Defendant, Evans, having obtained the title through fraud, no title vests in him, except in trust for the Plaintiff. A deed obtained through fraud or undue influence is void and will be set aside in equity, not only as against the one who practised the fraud, but as to third persons who have acquired interests under it, although they may be perfectly innocent, " thus undoing the whole transaction." *Vol.* 3, *Cowan's Reports,* 537.

The Defendants, Lovett, Powers, Boynton, and Jewett, being aware of the fraud committed by Evans, and being privy to it, were not *bona fide purchasers,* and no title passed to them, and the courts will set their deeds aside. 15 *Johnson, V.P.,* 147, *Vol.* 1; *Page's Ch. R., p.* 492.

The Plaintiff shows by his pleading that he built the mills and improvements, and put in the machinery ; that he was in the possession and occupancy, and that Defendant, Evans, dispossessed him of the possession, and use and occupancy of the mills and machinery. Plaintiff was certainly entitled to the use and occupancy of the mills and machinery by him built, although the land might belong to another, until he was by law dispossessed, and a part of the relief asked is to be replaced in possession of the mills.

Tourtellotte & Pitcher, and A. G. Chatfield, Counsel for Appellants.

Willard & Barney, Counsel for Respondents.

*By the Court.*—Flandrau, J.—This case presents a most extraordinary state of facts, and perhaps the most expeditious mode of giving our views upon them, and at the same time making them appear in a connected and intelligible form, will be to take the land from the time the title was in the United States, and follow it through all its transfers,

showing the state of the title, and the equities of the parties as they appear from the whole pleadings, at each successive step, with such comment as may be appropriate, during the progress of the examination.

Askin pre-empted the land November 17, 1855. He pre-empted in violation of the law of Congress in several respects, but perhaps the only one material to notice, is the agreement that existed between himself and the Plaintiff, by which the latter was to become a part owner of it with him. What the terms of this agreement were as to the particular interest the Plaintiff was to have in the land, does not appear until after Askin had conveyed it to Case, which took place on the 3d day of January, 1856, Case purchasing the land " with the intent of carrying out, fulfilling and completing the intent, purposes and agreements of said Askin with the Plaintiff." It then transpires that the agreement was, that Case and the Plaintiff were to found a town on the land, and build certain mills and machinery, &c., and that the Plaintiff was to have three-fifths of the land and four-fifths of the mill and machinery, and Case was to have the balance, which interests they were to hold in common, and they were to be also the proprietors of the town.

It is hardly necessary to say, that such an agreement made with a pre-emptor, concerning land that he was about to pre-empt under the act of Congress of September 4th, 1841, would be utterly void, and so tainted with immorality as to render it incapable of becoming the foundation for any rights, let alone equities. It involves a perjury under the act, and nothing more nor less.

It is quite clear under the allegations in the pleadings, that Case took the land subject to this agreement, and not that a new one was entered into between Case and the Plaintiff. He purchased " with the intent of carrying out the agreement of Askin with the Plaintiff." *Fol.* 11, *Complaint*, and afterwards " The said Anthony Case had an understanding and agreement by which the Plaintiff and the said Anthony Case were to carry out the said agreements and understandings of said Askin with the Plaintiff," &c. *Fol.* 12, *Complaint*. This agreement resting in parol, and it not expressly appear-

ing that Case had knowledge of its having been made with Askin, prior to his pre-empting the lands, we will examine its effects under the pleadings, as a new agreement with Case, unaffected by the fraud upon the act of Congress.

At the time Case took the land from Askin, January 3, 1856, nothing had been done upon it in the way of carrying out the agreement. The first act that was performed in pursuance of it, was the survey of the town of "Fremont," on the 15th of June, 1856, by the Plaintiff. The contract, therefore, even when relieved of its fraudulent features, was within the Statute of Frauds, and could not be enforced at law, and only in equity upon the idea that the Plaintiff, relying upon it, had performed, or partly performed it, and it would be a fraud upon him to allow the Defendant to take advantage of the Statute of Fraud to appropriate the expenditures of the Plaintiff, while at the same time violating his own promise. 2 *Story's Equity*, secs. 759, 760. It must be remembered also that when a Court of Equity is called upon to aid a party against the operation of the Statute, and the acts of one who would take an unjust advantage of it, it scrutinizes the conduct and acts of the party invoking its aid, and demands of him the utmost good faith and fair dealing.

The Plaintiff's equities, under this agreement with Case, depend upon the expenditures made by him in carrying out the same, and he alleges that he made very large outlays under the contract.

On the 3d day of August, 1856, the Plaintiff was insolvent, and applied to be discharged from his debts by proceedings in insolvency, in the State of Massachusetts. On the 29th of August, 1856, all the property of the Plaintiff was assigned, by act of the Court, to trustees for the benefit of his creditors, and on the same day was sold by the trustees to John Farnsworth, for the sum of $15,000, who took the same upon a secret trust with the Plaintiff, that it should be for his benefit ; and that the Plaintiff, on paying Farnsworth his outlay, and two thousand dollars per annum for his services about the estate, should have it all back again.

Under these circumstances the Plaintiff commenced building the dam at "Fremont," on the 15th day of September,

1856, about two weeks after his having been declared insolvent in Massachusetts, and went on making large outlays, as he alleges, in constructing the hotel, mills, machinery, &c., in the town.

There can be no doubt that the agreement between the Plaintiff and Farnsworth, creating a secret trust in favor of the former for the estate that had been on the same day assigned for the benefit of his creditors, was void. Such a transaction could not stand for a moment before any court ; and the Plaintiff would not, nor would his trustees, be allowed to show that the sale to Farnsworth was an advantageous one for the creditors. Such speculating by insolvents with their assigned estates cannot be tolerated under any circumstances. Now, if matters stood thus, no Court of Equity could resist the conclusion that the improvements put on the town site by the Plaintiff, were from the avails of the insolvent estate. Nor in putting this view, do we go to the extent claimed by the Defendant's counsel, that a man once shown to be insolvent is to be presumed so until he makes the contrary appear. The rule that the status of a party as to a disability or otherwise, being once fixed, remains, obtains in many cases ; but we do not think it applicable to insolvency. Yet where insolvency is alleged, and is accompanied by such an unauthorized attempt to regain the estate, as appears in this case, and the insolvent is seeking the aid of a court to uphold equities founded upon expenditures of money made immediately after insolvency, he must clear the matter up much more explicitly than by alleging simply that the expenditures were of " after acquired property." Where such a presumption is raised against him, he should overcome it by the clearest allegations, or the Court will be bound to take his evasive denials as confirmation of the charge. No equities can arise in favor of the Plaintiff upon facts such as have accompanied the acquisition of his interest, from its inception with Askin, to the point at which we have now carried the examination. Should we stop here the Court would be obliged to leave him where he had placed himself, in the hands of Case, dependent upon his fulfilling the confidence reposed in him. The Plaintiff has defeated his own equities,

by showing that they are founded upon acts *in fraudem legis.*

The case presents many other features, taken in connection with those we have considered, that would awaken hesitancy in a Court of Equity to interfere in behalf of the Plaintiff. In the spring of 1857, the Plaintiff took from Case and wife a power of attorney to act in their behalf concerning the land, which power authorized him to convey any portion of the land in such pieces, and to such persons as he should deem for the best interests of the town, &c. Case, under the Plaintiff's own showing, was entitled by his purchase from Askin to two-fifths of the town property, and one-fifth of the contemplated improvements, &c., for which he had paid the sum of $800 to Askin, the proportion he was to bear in the expenditures not appearing.

Case, on the 13th day of October, 1857, gave Evans a bond for a deed of three-fifths of the town site, and a piece of land on the south side of the river near the mill dam, for a brick yard, &c. Of the execution of this bond to Evans the Plaintiff was informed, and consented thereto upon the understanding that Evans was to hold the land for him, the Plaintiff. It is true that the Plaintiff alleges, that Evans had represented to Case that the Plaintiff desired the bond so made, and that such statements were false and fraudulent, but it afterwards coming to the Plaintiff's knowledge that the bond had been so made out, and Evans renewing his statement, that he held it for the Plaintiff, the latter rested upon the verbal trust so created, and went on making investments.

Two months after this, and on the 14th day of December, 1857, the Plaintiff, as attorney for Case, conveyed the remaining two-fifths of the town site to David K. Shaw, without any consideration, and with the verbal understanding that Shaw should re-convey it to Case, or as the Plaintiff should direct.

Now let us see how the property stood at this time, upon the theory of the Plaintiff. The bond to Evans made by Case was one of the three-fifths of the land that belonged to the Plaintiff, because the verbal condition of the bond was, that it was for the use of the Plaintiff. Evans was merely

the trustee of the interest of the Plaintiff, which had formerly been in Case, under a similar verbal trust. Therefore, the remaining two-fifths of the land was the property of Case. Now the Plaintiff had the disposal of this two-fifths under his power of attorney, and he was bound to do so in good faith towards his principal; but instead of doing so he conveyed it, without consideration, to Shaw, upon the verbal understanding that Shaw would convey it to Case, or to whomsoever the Plaintiff should request. Now, unless Case consented to such a disposition of his interest, which does not yet appear to have been the case, and Shaw proved false to his trust, it would hardly be fair to set aside the conveyance that Case had made to Evans, thus restoring the three-fifths to Case, and then compel Case to convey them to the Plaintiff, under the settlement of the 14th of January, 1858, or under the original arrangement of their interests ; because, in such event, Case would be stripped of all ownership in the lands, having irretrievably lost the other two-fifths by the deed of his attorney to Shaw. I say irretrievably lost, with reference to vacating the deed on the application of the Plaintiff, as I can see no grounds upon which, in such case, it can be done. Case, the principal, might, perhaps, set it aside, it having been made on the terms it was ; but certainly the attorney could not question it. He having voluntarily relied upon the word of Shaw to re-convey, and that promise being within the Statute of Frauds, it cannot be enforced. No court would decree a conveyance by Case to the Plaintiff of his interest under such circumstances. But even if the bond and consequent deed to Evans should be set aside, and Case be restored as trustee of the Plaintiff's interest, he would be allowed to retain at least two-fifths of it as his own, as against his un-faithful attorney, and especially in this case, where the interests are all undivided, and no *particular* share could have been conveyed by either of the deeds.

After the deed to Shaw of the two-fifths of the whole property, Shaw conveyed two-fifths of the mill property to Evans on the 29th day of December, 1857, the Plaintiff alleging that he did it upon the representations of Evans, that he was receiving it for the Plaintiff. This is the first conveyance by which Evans acquired the legal title to any of the property.

After all this, and on the 14th day of January, 1858, Case and the Plaintiff met and had a settlement, Evans being present. The Plaintiff and Case agreed that the property should be divided as follows : The Plaintiff to have the whole of the mills and machinery, with the block they occupied, and the undivided three-fifths of the town property, with certain exceptions unnecessary to mention. And Case was to have two undivided fifths of the town, with some immaterial exceptions and reservations. The Plaintiff, for this distribution, was to pay Case " a certain amount of money."

The parties, at this time, were all fully aware of the condition of the title. They knew that two-fifths of the town property was in Shaw, by the deed from Plaintiff, as Case's attorney ; also, that Shaw had, in violation of his secret trust with the Plaintiff, conveyed two-fifths of the mill property to Evans, and that Evans had the bond from Case for three-fifths of the town property. With this understanding, the Plaintiff consented that the deed should be made by Case of all the ' property that was coming to him under the settlement to Evans, upon Evans promising him that on the next day he would convey it over to him. Now, no matter how fraudulent the previous conveyances to Evans might have been, they were adopted by the Plaintiff as the very reason why the last one should be made. The Plaintiff alleges that Evans, on the occasion of the settlement, represented to him and to Case that the fact of his having these conveyances was a reason why the last one should be also made to him, and promised that he would, on the next day, convey it all to the Plaintiff, and the Plaintiff, " fully relying upon such promises and representations," allowed the deed to be made. This certainly presents a most unusual and incomprehensible state of things, involving an amount of credulity on one side, and assurance on the other, seldom met with in the affairs of men. Yet, as the Plaintiff avers it, we must take it to be true. The deed was accordingly executed to Evans, and he declined to make good his promise by conveying it to the Plaintiff. Does the transaction constitute a fraud such as a Court of Equity will relieve against ? or do the facts simply constitute a parol promise to convey land ? The real nature of the transaction

must be determined upon the facts, and not upon the terms by which the Plaintiff designates it.   He characterises it as as a fraud and a swindle ; but if every false promise to convey land is to taint the proceeding with fraud, then the ends of the Statute of Frauds are at once defeated, and every such promise may be relieved against in equity.   Such is not the law.   In the case of *Fisher vs. The New York Common Pleas*, 18 *Wend.*, 608, the Plaintiff had leased a house much out of repair, and promised that he would insert a clause to do the repairs.   On his producing the draft of the agreement it was objected that the clause for repairs was omitted.   The Plaintiff objected to putting it in, saying he would do them, and that his word was as good as his bond. The agreement was signed upon these representations, and the promise violated.   On suit for the rent, the defence was fraud in obtaining the signature to the instrument.   The Court say :

" Fraud cannot be predicated of a promise not performed, for the purpose of avoiding a written instrument, or bargain of any kind.   This case is no more.   A contrary doctrine would avoid almost every contract for the breach of which a suit is to be brought."

" It is said, here was an intention not to perform, and a drawing in of the party to sign and seal by a delusive promise of performance, with a fraudulent intent to leave the premises out of repair.   I have only to say that the tenant, and the Defendant below were content to take the Plaintiff's word.   If that was not legally obligatory, then there has been a mistake of the law ; but the Defendant could not set that up for fraud."   See also *The Commonwealth for the use of Brenneman*, 1 *Rawl.*, 311.

Now what more was the promise of the Defendant, Evans ? He said he would convey, and has not done so.   Our Statute upon this subject is as follows :

" No estate or interest in land, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance

in writing, subscribed by the parties creating, &c." *Comp. Stats.*, 497, sec. 6. Also, " When a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made ; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section." *Comp. Stats., p.* 382, *secs.* 7, 8, 9.

The succeeding section provides that the creditors of the party paying the consideration may impeach the deed, and that a trust results for their benefit. The next section protects principals against the acts of their agents, and also parties who pay for land, when the conveyance goes to another without their consent.

The case of *Wentworth vs. Wentworth,* 2 *Minn. R.,* 277, decided by this Court, from its peculiarly iniquitous features, presented the question of relieving against such promises, in a light perhaps as strongly demanding intervention as any case ever considered. Yet we could not have done so without overthrowing the Statute of Frauds. There the Plaintiff had settled upon and improved lands to a large amount, and allowed his brother to enter them at the United States Land Office, with all his improvements, upon his promising to reconvey them when the purchase price should be repaid to him. He violated the faith reposed in him, and although it was a very hard case, we could not decree a specific performance without repealing in effect the Statute of Frauds, and the Plaintiff had to lose his land and improvements.

Under the view we have taken of the case down to this point, it will be unnecessary to consider the effect of the purchase by Evans of the assets of Folsom's estate from Farnsworth, or whether it included the property in question. There is an obvious want of equity pervading the Plaintiff's case from beginning to end, as well as insuperable legal obstacles to his recovery. It is also unnecessary to notice the deeds by Evans to Lovett and Powers, and the subsequent ones mentioned in the complaint.

As all parties, both Plaintiff and Defendants, ask that the deed from Askin to Case be corrected, and made to conform

to the fact, or the correction be made in the record of such deed, if the mistake occurred therein, and also that the deed from Askin to Simeon P. Folsom, and the deed from Folsom to Whitney, be set aside, the Court will retain the case for the purpose of granting such relief, but dismiss the complaint for all other purposes.

Let an order be entered, that the Defendant, Anthony Case, produce in court for inspection, the deed from Askin to him, within fifteen days after service of a copy of the order upon him, or account satisfactorily for its absence. If it shall appear on the return of such order, that the error in the description of the land occurred in the deed, or in the record of the same, let the error be corrected by a proper and sufficient clause in the decree. Let the decree also cancel the deed from Askin to Simeon P. Folsom, and from Simeon P. Folsom to Whitney. The appeal being from an order, the record is in the District Court.

EMMETT, C. J., *dissents.*