# Alabama National Bank v. Halsey.

### *Action on Promissory Note.*

1    *Promissory note; fraudulent misrepresentations; sufficiency of plea.* In an action on a promissory note, a plea of the defendant alleged that the note sued on was a renewal of one made to one R. for stock in a corporation; that said R. and two other persons, S. and J., were interested in placing said stock; that said S., acting in behalf of himself and said R. and J., induced the defendant to sign said original note, by representing that certain other persons had subscribed for a large amount of stock in said corporation, that arrangements had been made for the sale of a large amount of the product of said corporation to certain other persons, and that the property of said corporation was then marketable and productive; but that said representations were wholly false. *Held,* that the averments of said plea imported responsibility on said R. and J. for the representations of said S., and that the misrepresentations averred were sufficient to avoid the original note and all mere renewals of it, as between the defendant and said R. and his assigns with notice.

2.    *Demurrer to several pleas; when should be overruled.*—Where a demurrer goes to several pleas, not separately, but jointly, it should be overruled if either of the pleas is sufficient.

3.    *Defenses against commercial paper; want of notice, how pleaded.*—In an action on a promissory note, brought by an assignee thereof, a plea setting up fraudulent misrepresentations by the payee, by which the defendant was induced to sign the note, *prima facie,* presents a good defense, without averment that the plaintiff acquired the note with notice of the infirmity, and puts it upon the plaintiff to reply that he purchased the note in good faith, for value, before maturity, and without notice of the alleged infirmity.

4.    *Specification of grounds of demurrer.*—The rule established by the statute (Code, § 2690), and decisions upon it, is that no objection to pleading can be considered other than that specifically stated as ground of demurrer.

5.    *Promissory note; illegal consideration; fictitious stock.*—Where the only consideration of a note was fictitious stock in an Alabama corporation, to be afterwards issued to the maker, two dollars in stock

[Alabama National Bank v. Halsey.]

to be issued for each one dollar promised by the note to be paid
therefor, the performance and consummation of the contract neces-
sarily involving a violation of the law declaring void the fictitious
issue or increase of stock by a private corporation (Constitution of
Ala., Art. XIV., § 6), the original note and renewals thereof are illegal
and void.

6. *Defenses against commercial paper; bona fide holder; burden of
proof as to notice.*—Where, in an action on a promissory note, brought
by an assignee thereof, the defendant pleaded that he was induced to
execute the note by misrepresentations made by the agent of the
payee, and the plaintiff replied that it purchased the note in the reg-
ular course of its business, for value, before its maturity, in good
faith, and without notice of the alleged misrepresentations; and the
evidence showed without conflict that the note had been purchased
by the plaintiff in the usual course of its business, for value, and be-
fore maturity,—the burden was cast on the defendant to show that
plaintiff had knowledge or notice of the infirmity of the transaction
growing out of said alleged misrepresentations; and, in the absence
of any evidence that plaintiff had such knowledge or notice, evidence
offered by the defendant to prove said alleged misrepresentions was
inadmissible.

7. *Special replication; when proof of, essential to plaintiff's recovery.*
Where, in an action on a promissory note, the plaintiff did not take
issue on special pleas interposed by the defendant, but specially re-
plied thereto, and the defenses relied on were not within the general
issue presented by the parties, it was essential to plaintiff's recovery
that the averments of his special replication be proved.

8. *Release of indorser; when not valid consideration for renewal note.*
Where the consideration of a promissory note made to a corporation
was fictitious stock to be afterwards issued to the maker, and, on the
indorsement of such note by the payee, such fictitious stock was
issued, and delivered to the indorsee as collateral security, the con-
tract of indorsement itself, considered as a new contract, independ-
ent of the note, involved the doing of an illegal act, rendering the
contract unenforceable by the indorsee against the indorser and its
release, by the indorsee accepting a renewal note from the maker
alone, incapable of constituting a new consideration for such renewal
note.

9. *Renewal of promissory note, invalid because of illegality of consid-
eration.*—Mere renewals, however often repeated, of a promissory
note, invalid because of illegality of consideration, do not heal the
infirmity, or prevent the maker from insisting upon it.

10. *Misleading charges, and charges assuming the existence of facts as
to which the evidence is conflicting*, are properly refused.

APPEAL from the Circuit Court of Madison.
Tried before the Hon. H. C. SPEAKE.
This was an action on a promissory note, brought by

the appellant, the Alabama National Bank, against the appellee, Charles H. Halsey. The suit was instituted on February 14, 1893. The defendant pleaded : (1) The general issue ; (2) That he was not indebted to the plaintiff in the manner and form alleged in the complaint ; and the following special pleas : "(3) The alleged indebtedness represented by said note was·for a subscription by the defendant to the stock of the Coal City Coal & Coke Company, a corporation. And defendant shows that he was induced to make said subscription by the following, among other, representations made to him at the time by one Samuel H. Buck, to wit : That C. C. Harris and W. W. Littlejohn, of Decatur, Alabama, had subscribed for a large amount of stock in said corporation ; that J. R. Stevens, of Huntsville, Alabama, had agreed to take a large amount of stock in said corporation ; that arrangements had been made for the sale of a large amount of coal by said corporation to Hunt & Co., of Memphis, Tennessee, each month ; and that the property of said proposed corporation was then marketable and productive. And defendant shows that said representations were wholly false, and that said Samuel H. Buck was interested in placing the stock of said corporation with Joseph F. Johnston and R. D. Johnston, and was acting in behalf of the persons associated together in placing the stock of said corporation ; and, for the stock so subscribed for by the defendant, said Samuel H. Buck procured the defendant to execute a note payable to said R. D. Johnston, which said note was renewed and extended by a note to the plaintiff, of which said Joseph F. Johnston was then, and is now, the president ; and said plaintiff, through its said president, had notice that said representations of said Buck were untrue. (4) There has been a failure of consideration for the alleged indebtedness represented by the note sued on, in this : that the original considertion for said indebtedness was the sale to the defendant of a portion of the capital stock of the Coal City Coal & Coke Company, a corporation, in which Joseph F. Johnston, R. D. Johnston, and others were interested with one Samuel H. Buck ; and said Samuel H. Buck, acting in behalf of the persons so interested in said corporation, represented that the stock thereof agreed to be purchased by the defendant was worth more than the sum

of five thousand dollars, and by such representation in-
duced defendant to execute his note to said R. D. John-
ston, for which said note, or the balance unpaid thereon,
the defendant executed his note to the plaintiff, of which
said Joseph F. Johnston was then, and is now, the pres-
dent. And said stock was then, and is now, worth
greatly less than the sum of five thousand dollars, and is
wholly worthless to the defendant; and plaintiff,
through its president, had notice that the note sued on
was given in extension or renewal of said alleged in-
debtedness represented by said note to R. D. Johnston.
(5) The consideration for the alleged indebtedness rep-
resented by the note sued on was and is illegal and void, in
this : that the only consideration for the original note
executed by this defendant to one R. D. Johnston was
that twice the amount of said note in the stock of the
Coal City Coal & Coke Company, an Alabama corpora-
tion, should be issued to the defendant, as a subscriber
to the stock of said corporation; and the stock so issued
by said corporation did not represent money, labor done,
or money or property actually received, but in the stock
so issued there was a fictitious increase of two dollars of
stock for each one dollar of money subscribed therefor ;
and the note sued on is a renewal or extension of said
alleged original indebtedness represented by said note to
said R. D. Johnston, and the plaintiff, through its pres-
ident, had notice that the only consideration for said al-
leged indebtedness was the issue to defendant of said il-
legal stock. (6) The consideration for the alleged in-
debtedness represented by the note sued was the issue to
the defendant of shares of the capital stock of the Coal
City Coal & Coke Company, an Alabama corporation ;
and defendant shows that said stock was illegal and void,
in this : that two dollars of said stock was issued for
each one dollar proposed to be paid therefor by defend-
ant. (7) The only consideration for the alleged indebt-
edness represented by the note sued on was the issue to
defendant of shares of the capital Stock of the Coal City
Coal & Coke Company, an Alabama corporation ; and
defendant shows that he was induced to agree to take
said stock by the following among other representations
made to him at the time by one Samuel H. Buck, to-wit :
That C. C. Harris and W. W. Littlejohn, of Decatur,
Alabama, had subscribed for a large amount of the stock

of said corporation; that J. R. Stevens, of Huntsville, Alabama, had agreed to take a large amount of the stock of said company; that a contract had been made with Hunt & Company, of Memphis, Tennessee, for the sale to said Hunt & Company of a large amount of coal to be mined by said company; and that the property of said company was then marketable and productive. Said representations were wholly false. Said Samuel H. Buck, at the time said representations were made, was associated with Joseph F. Johnston, R. D. Johnston, and others in placing the stock of said corporation, and, in procuring the defendant to agree to take said stock, was acting for and in behalf of the persons so associated together. And, for the stock so agreed to be taken, by defendant, said Joseph F. Johnston, who was then, and is now, the president of the plaintiff, sent to the defendant a note to be signed, which said note was made payable to said R. D. Johnston or order; and defendant signed said note and returned it to said Joseph F. Johnston; and the certificate for said stock, which was to be issued to defendant, was never delivered to him, but was retained by the plaintiff, which became the holder of said note; and the note sued on is a renewal note for part of the alleged indebtedness represented by said note to said R. D. Johnston. (8) The only consideration for the alleged indebtedness represented by the note sued on was and is illegal and void, in this: that said alleged indebtedness was originally evidenced by a note signed by defendant, and made payable to one R. D. Johnston, which said note was sent by defendant to Joseph F. Johnston, who was then, and is now, president of plaintiff. And the only consideration for said original note was that there should be issued therefor to the defendant ten thousand dollars of the capital stock of the Coal City Coal & Coke Company, an Alabama corporation, which said stock so to be issued to the defendant did not represent money, labor done, or money or property actually received by said corporation, but in the stock so to be issued to the defendant there was a fictitious increase of two dollars of stock for each one dollar of money undertaken by said note to be paid for the issue thereof to defendant. And defendant shows that the certificate for said stock had not been delivered to the defendants, but the plaintiff, with knowledge and notice

of the facts in this plea stated, received said original note and said certificate of stock, and held the same, and the note sued on was given for part of said alleged indebtedness represented by said original note to said R. D. Johnston. (9) The note sued on was given in renewal of part of an alleged indebtedness, the only consideration whereof was and is illegal and void, in this: the only consideration of said original alleged indebtedness was the proposed issue to the defendant of shares of the capital stock of the Coal City Coal & Coke Company, an Alabama corporation. And defendant shows that said stock was illegal and void in this: that two dollars of said stock was to be issued for each one dollar proposed to be paid therefor by the alleged agreement of defendant to take said stock. (10) For further answer to the complaint, the defendant says that the only consideration for the alleged indebtedness represented by the note sued on was and is illegal and void, in this: that said note was given for part of an illegal indebtedness originally represented by a note signed by defendant, and made payable to one R. D. Johnston, which said note was held by the plaintiff. And the only consideration for said original note was the promise to have issued therefor to the defendant ten thousand dollars of the capital stock of the Coal City Coal & Coke Company, an Alabama corporation, which said stock so promised to be issued to the defendant was not to represent money, labor done, or money or property actually received by said corporation, but in the stock so to be issued to the defendant there was to be a fictitious increase of two dollars of stock for each one dollar of money so undertaken to be paid in therefor by the defendant; and said stock so proposed to be issued has not been issued to and received by defendant. (11) The consideration for the alleged indebtedness represented by the note sued on was and is illegal and void in this: that said note was given for part of an alleged indebtedness originally represented by a note signed by defendant, and made payable to one R. D. Johnston, which said note was acquired and held by the plaintiff. And the only consideration for said original note was the sale of stock thereafter to be issued to the defendant by the Coal City Coal & Coke Company, an Alabama corporation, which said proposed issue of stock

[Alabama National Bank v. Halsey.]

was illegal, in this : that two dollars of stock was to be issued for each one dollar proposed to be paid therefor ; and defendant's promise to take such stock has remained executory, and said stock has not been delivered to or accepted by defendant."

The plaintiff demurred to the third and fourth pleas jointly, on the following grounds : (1) Said pleas are too vague, uncertain and indefinite to raise a material issue, in this : they fail to show in what manner said Joseph F. Johnston was interested in said Coal City Coal and Coke Company, or that his interest therein or connection therewith was such as to make any representations by him to defendant in any manner binding on said company. (2) They fail to show that said Buck was in any manner acting under instructions or authority from said company in making said representations. (3) They fail to show that said representations made by Buck were of a character which, if false, would constitute any defense to the action, even if Buck had authority to make them. (4) Said pleas fail to bring notice home to this plaintiff, or knowledge of said alleged want or failure of consideration, because they fail to show that said Joseph F. Johnston, when he acquired such notice or knowledge, was acting for the plaintiff, or in any manner as its agent or in its behalf. To the fifth and sixth pleas the plaintiff demurred on the following grounds : (1) They show that the indebtedness sued on was for the subscription to the stock of said company by defendant, and he thus became a debtor of the corporation for stock, and he can not now be heard to deny his indebtedness therefor, even if said stock was fictitious and void. (2) The defendant, in becoming a subscriber for said stock, made himself part and parcel of said corporation, liable to its creditors and others interested in it, to the extent of said indebtedness, and he is now estopped to deny such liability. (3) Said pleas fail to bring knowledge or notice home to this defendant of said alleged want or failure of consideration, because they fail to show that said Joseph F. Johnston, when he acquired such knowledge, was acting for the plaintiff, or in any manner as its agent. (4) Said pleas fail to set out facts showing wherein said stock is fictitious and void. (5) They fail to state any fact or facts showing the issuance of such stock to defendant was a fictitious

increase of its stock by said company. To the seventh, eighth, ninth, tenth, and eleventh pleas the plaintiff demurred on the following grounds :   (1)   Said pleas fail to bring notice or knowledge home to this plaintiff of said alleged want or failure of consideration, because they fail to show  that said Joseph F. Johnston, when he acquired such knowledge, was acting for the plaintiff, or in any manner as its agent or in its behalf.   (2) Said pleas show that the indebtedness sued on was for the subscription to the stock of said company by defendant, and he thus became a debtor of the corporation for stock, and he can not now be heard to deny his indebtedness therefor, even if said stock was fictitious and void.   (3)   Said pleas fail to set out facts showing wherein said stock is fictitious and void.   (4)   Said pleas show that plaintiff does not sue as the original payee of the indebtedness ; therefore they should state facts showing  that it did not acquire said indebtedness *bona fide*, for value.   The court sustained the demurrers to the fifth, sixth, eighth, and ninth pleas, and overruled the demurrers to the third, fourth, seventh, tenth, and eleventh pleas.   The plaintiff filed a replication to the third, fourth, seventh, tenth, and eleventh pleas, the substance of which is stated in the opinion.

On the trial, the note sued on was introduced in evidence by the plaintiff, and it was shown by evidence for the plaintiff that it was given in renewal of a note which had formerly been executed by the defendant to the plaintiff.

Upon the introduction of all the evidence, the plaintiff requested the court to give to the jury the following written charges, to the refusal to give each of which it separately excepted :   ''(1)   If the jury believe the evidence, they must find for the plaintiff.   (2) If the only defense the defendant has shown existed at the time his first note fell due, and he renewed that note from time to time, and asked indulgence of the plaintiff, and set up no defence then, and thereby induced the plaintiff to give him time, then the jury must find for the plaintiff.   (3)   If you believe the testimony of Halsey that he gave his note about 1st July, 1889, payable for $5,000, with interest on February 4, 1890, to R. D. Johnston, and that said note was given for 100 shares of stock of Coal City Coal & Coke Company, to be issued to him ;

and if you further believe that said stock was issued to Halsey, and attached to the note, and on August 1, 1889, said note was indorsed to and discounted by the plaintiff, and, when said note fell due, it was extended by plaintiff at Halsey's request, the plaintiff taking a new note, payable to itself; and that Halsey did not set up any defense to said original note, or any illegality in it; and that the note sued on is the balance on said original debt,—then you must find a verdict for the plaintiff."
At the request of the defendant, the court gave to the jury following written charges, to the giving of each of which the plaintiff separately excepted: (1) "If the jury believe from the evidence that the note sued on was given in renewal for the balance remaining unpaid of the amount originally promised to be paid by the defendant by a note signed by him, and made payable to R. D. Johnston, and that the only consideration for said original note was that ten thousand dollars of the stock of the Coal City Coal & Coke Company, an Alabama corporation, should be issued to the defendant after the signing and delivery of said note by him, and that original note was for the sum of five thousand dollars, then the jury should find for the defendant, if they find from the evidence that said original note was acquired and held by the plaintiff, and the renewal notes afterwards given for the amount thereby represented were made payable to the plaintiff, unless they are satisfied from the evidence that the plaintiff became the holder of said original note before the maturity thereof, for a valuable consideration, and without notice or knowledge of the true consideration for said original note, or of any infirmity therein or defense thereto. (2) If the jury find from the evidence that the note sued on is a renewal note for the balance remaining unpaid of the amount promised by the defendant to be paid by a note made payable to R. D. Johnston; and that the only consideration for said note to R. D. Johnston was that twice the amount thereof in the stock of the Coal City Coal & Coke Company, an Alabama corporation, should be issued by said corporation to the defendant; and that the plaintiff acquired the said original note to R. D. Johnston with knowledge of the consideration thereof; and that the note sued on represents the balance remaining unpaid of said original amount promised to be paid

[Alabama National Bank v. Halsey.]

by said note to R. D. Johnston,—then the jury should find for the defendant.'' There were verdict and judgment for the defendant, and the plaintiff appeals.

DANIEL COLEMAN, TANCRED BETTS and JAMES E. WEBB, for appellant.—(1) If Joseph F. Johnston, the president of the plaintiff bank, had notice of the defenses to the original note given by Halsey, unless such notice came to him in his official capacity as president of plaintiff, it was not notice to the plaintiff.—*Goodbar, White & Co. v. Daniels*, 88 Ala. 590. (2) The Alabama National Bank was a *bona fide* purchaser of defendant's note for $5,000.00, which was given by the defendant for the stock. It was a note payable in bank. Unless the statute of the State, or some constitutional provision, expressly declares the note void, it is not open to any defenses in the hands of a *bona fide* purchaser.—*Hawley v. Bibb*, 69 Ala. 56. The authorities are not harmonious; but there are respectable authorities which hold that, even where the statute pronounces the contract void, all defenses are cut off when it has passed into the hands of a holder for value, who has purchased it before maturity, without notice.—Cook on Stocks and Stockholders (3rd. Ed.). § 765 ; Daniel on Negotiable Instruments, § 207 ; *Drake v. Chandler*, 18 Grat. 912 ; *Ex parte* CHORLEY, L. R. 11 Eq. 157. (3). The contract made by defendant, as described in his 10th and 11th pleas, is not one which is declared void by statute. A contract to pay $5000.00, and get for it $10,000.00 worth of stock is not an illegal contract, prohibited by section 6 of Art. 14 of the State Constitution. Neither of the pleas shows that the Coal City Coal and Coke Company was a corporation organized under the general statute. For all that appears in the pleadings and proof, that company may have been incorporated by special act of the legislature. The contract then was not illegal.—*Nelson v. Hubbard*, 11 So. Rep. 428 ; *Railroad Co. v. Dow.*, 120 U. S. 287 ; *Railroad Co. v. Thompson*, 103 Ill. 187 ; Cook on Stock and Stockholders (3rd. Ed.), § 47. (4). The release of the Coal & Coke Company from its indorsement was a new and legal consideration, entirely disconnected from the original consideration between that company and the defendant, and was sufficient to support defendant's new promise, con-

[Alabama National Bank v. Halsey.]

tained in the removal notes, the last of which is sued on. —*George v. Stanley*, 4 Taunton, 683 ; *Calvert v. Williams*, 64 N. C. 168; *Torbett v. Worthy*, 1 Heiskell, 107 ; *Cuthburt v. Holey*, 8 Term Rep., 390 ; *Hay v. Ayling*, 71 Eng. Com. Law. Rep. 423. (5) When Halsey executed the first renewal note, and used the stock as collateral security, his promise to pay for the stock was no longer executory. It was executed. The case does not fall within the influence of the decision in *Williams v. Evans*, 87 Ala., but the rule declared in the later case of *Beitman v. Steiner*, 13 So. Rep. 88, is applicable.

R. W. WALKER, *contra.*—(1). The only consideration to support Halsey's original note was an executory agreement to have issued to him fictitious stock in a domestic corporation,—two dollars of stock to be issued for each one dollar of money promised to be paid therefor. The moving of the consideration to the defendant necessarily involved the doing of an act prohibited by law. The consideration was illegal.—*Williams v. Evans*, 87 Ala. 725; *Beitman v. Steiner*, 13 So. Rep. 87. (2) The original note having been given for an illegal consideration, the giving of renewal notes did not cure the defect. The illegality of the original consideration renders the renewal notes as void as the first one.—*Wilson v. Bozeman*, 48 Ala. 71 ; *Ware v. Morgan*, 67 Ala. 468; *Pettit v. Pettit* 32 Ala. 308 ; *Coppell v. Hall*, 7 Wal. 542 ; Randolp hon Com. Paper, §§ 536, 1787 ; Tiedeman on Com. Paper, § 180 ; Bishop on Contracts, § 488 ; 16 Am. & Eng. Ency. of Law, 864. (3) The contract of indorsement of the original note to the plaintiff involved the doing of an illegal act. In releasing the indorser, the plaintiff merely gave up a claim which could not be enforced, because its only support was an illegal consideration. Such release could not constitute a new consideration to support the renewal notes. (4) The court can consider only such objections to pleas as are distinctly stated in the demurrers.—Code § 2690 ; *Evitt v. Lowery Banking Co.*, 96 Ala. 381. (5) Some, at least, of the mass of evidence which was objected to in a lump was competent, under the pleading, being in direct support of averments in pleas upon which the plaintiff did not even join issue. No issue having been joined on the pleas, the averments thereof could have been treated as admitted ; and the admission

[Alabama National Bank v. Halsey.]

of evidence in support of those averments could not have been erroneous.

McCLELLAN, J.—This action is by the Alabama National Bank against Halsey, on a promissory note executed by the defendant to the plaintiff, and payable at the latter's bank in Birmingham, Ala. The defenses relied on were two,—false representations whereby defendant was induced to make the original note, which, through several renewals, constituted the consideration of that sued on ; and the illegality of the consideration of said first note and the renewals thereof. The 3rd, 4th and 7th pleas were intended to present the first defense mentioned, false representations by the plaintiff, or some one for whose representations in the premises the plaintiff is responsible. The 3rd and 4th pleas aver that the original note was made to R. D. Johnston, and that R. D. Johnston, Joseph F. Johnston and Samuel H. Buck were associated and interested together in placing or selling corporation stock, that Buck, acting for himself and his said associates, made alleged false representations to Halsey, and thereby induced him to buy the shares of said stock, which constituted the consideration of the original note. These facts imported responsibility on both R. D. and Joseph F. Johnston for the representations of Buck.

The misrepresentations averred in the third plea are clearly sufficient to avoid the original note and all mere renewals of it, as between Halsey and R. D. Johnston and his assignees with notice. The demurrer goes to both the 3rd· and 4th pleas, and this not separately, but jointly. Hence, even if the representations averred in the 4th plea are not of a character which, if false, would av·id the contract, still the demurrer, so far as this ground is concerned, was properly overruled, as to have sustained it would have been to adjudge the third plea also bad in this respect, which it clearly was not.— *Weems v. Weems*, 69 Ala. 104.

The further objection taken by the demurrer to these pleas, that they do not show that plaintiff had any notice of this infirmity of the original note, is in point of fact well grounded—the pleas do not show such notice—but in point of law the objection is untenable. *Prima facie*, the pleas, without averment of such notice,

presented a good defense, and put it upon plaintiff to reply that it purchased the note in good faith, for value, before maturity, and without notice of the alleged infirmity.—*Ross v. Drinkard's Admr.* 35 Ala. 434; *Gilman Sons & Co., v. New Orleans & S. R. Co.,* 72 Ala. 566, 582; *Mayor v. Wetumpka Wharf Co.* 63 Ala. 611, 632; *Johnson v. Hanover Bank,* 88 Ala. 271. Upon these considerations, we hold further that the demurrer to defendant's 7th plea was properly overruled.

What is said above as to the sufficiency of pleas 3 and 4, notwithstanding they do not aver notice to plaintiff of the infirmity of said note therein alleged, applies also to pleas 10 and 11, to which this ground of demurrer was also interposed. Pleas 10 and 11 aver that the Coal City Coal & Coke Company is an Alabama corporation. It is contended in argument that to present the defense intended to be made by these pleas, *viz.*, that the consideration of the original note was fictitious, and therefore void, stock of said company to be issued to Halsey, &c. &c , they should have averred that the corporation was organized under the general incorporation laws of the State, so as to have excluded the idea that it was organized under a special charter authorizing stock to be issued as this is alleged to have been. Without stopping to inquire or decide whether the legislature has power under the Constitution to confer such authority upon any corporation, it will suffice to say that this objection to the plea is not pointed out in the demurrers; and the rule established by our statute, and decisions upon it, is that no objection to pleading can be considered other than that specifically stated as ground of demurrer.—Code § 2690 ; 3 Brick. Dig. 705, §§ 70, et seq. ; *Turner Coal Co., v. Glover,* 101 Ala. 289.

Pleas 10 and 11 are not open to any of the objections which were taken to them by the several assignments of demurrer. They show that the consideration of Halsey's original note was fictitious stock of the Coal City Coal & Coke Company, *to be thereafter* issued to him, the performance and consummation of the contract necessarily involving a violation of law, and therefore rendering it illegal and void, on the principles declared in *Williams v. Evans,* 87 Ala. 727 ; and that the note sued on is but a renewal of this original invalid contract.

The demurrers to these pleas were properly over-ruled.

The plaintiff did not take issue on either of defendant's pleas numbered 3, 4, 7, 10 and 11, which were the only pleas in the case at the trial except that of the general issue, but specially replied thereto setting up as an answer to all of them the following facts: That the original note made by Halsey was for $5,000, and payable to the Coal City Coal & Coke Company, in February, 1890; that plaintiff discounted this note for said company at 8 *per cent.* in August, 1889, in good faith, and without notice of any infirmity therein; that said note was then indorsed to plaintiff by said company, and the proceeds thereof were then paid to said company, that when said note fell due it was renewed by the defendant until June 4th, 1890, he paying the interest thereon then due and to accrue before maturity of the renewal note; that this second note was renewed by Halsey to October 4th, 1890, he again paying the interest as before; that the original note and those of February 4th and June 4th, 1890, were payable at the Alabama National Bank, and were negotiable, and were acquired by plaintiff for value, without notice of any want or failure of consideration, or any defense, set off, discount or infirmity thereto, and said Halsey set up no such claim; "that the note due Oct. 4th, 1890, was not paid at maturity, and plaintiff placed it in the hands of attorneys for collection by suit or otherwise, and thereupon said Halsey, in January, 1891, proposed, in settlement and adjustment thereof, that if the plaintiff would accept the sum of $1,000. in cash and give him six months time, with the privilege of a further extension of six months in case he so desired it to pay the balance, he would pay the same promptly when due; and plaintiff accepted said proposition and took said Halsey's note payable to itself, and released said Coal City Coal & Coke Company as indorser, and accepted the $1,000 and the note of said Halsey for $4,265.23, due June 7th, 1891; and that when said note fell due plaintiff renewed the same at Halsey's request for a balance of $4,000; and when said last note fell due on January 7th, 1892, said Halsey asked for further time; and, upon payment by him to plaintiff of $1,000; plaintiff did grant him further time and renewed said note for said balance of

[Alabama National Bank v. Halsey.]

$3,000, to June 15th, 1892, and at its maturity again renewed said debt."

On the trial, Halsey, as a witness in his own behalf, was permitted against plaintiff's objection to testify as follows: "Buck stated to me that Capt. Joseph F. Johnston and his brother, R. D. Johnston, and others were interested in the company, that the property of the company was very valuable and would pay 20 *per cent.* on the investment; and he showed me a letter he had from Capt. Johnston, in which Capt. Johnston stated that he, Buck, would like to get some of their friends in Huntsville interested in the company, that in his opinion the property would pay twenty per cent. easily and that it could be sold in a little while at a profit; that witness said to Buck that he did not have the money to invest in the stock; that Buck then said to witness that he would have no money to pay, that he would only have to make his note for $5,000 for $10,000 of stock to be issued to him, that Captain Johnston would arrange to carry the note, and that he would get $10,000 of the stock of the Coal City Coal & Coke Company when he paid the note." Plaintiff's objection was overruled, and an exception was reserved. At the close of Halsey's testimony, as the bill of exceptions recites, "the plaintiff moved the court to exclude from the jury everything that he had said in regard to any statements made to him by Capt. Buck, or any conversation with Buck, and about Buck's showing him Captain John ston's letter and the contents of that letter, and any representations made to him by Buck, because the same was irrelevant, illegal and incompetent evidence." The court overruled this motion, and the plaintiff excepted. "The plaintiff renewed the motion," the bill of exceptions further shows, "at the conclusion of Captain Johnston's testimony, and also after all the evidence was in; and the court made the same ruling, and the plaintiff excepted." The only suggestion made by counsel in support of these rulings is that the objection and motions were too general, in that they went to a mass of evidence in a lump, and "that some, at least, of that evidence was competent under the pleadings, it being in direct support of averments in pleas upon which the plaintiff did not even join issue." It is true that some of this evidence went to support defendant's pleas

which set up the misrepresentations of Buck as avoiding
the contract and original note.  Plaintiff's replication
to all these pleas, however, set up that it purchased the
note in the regular course of its business, for value, be-
fore its maturity, in good faith and without notice of the
alleged misrepresentations of Buck and consequent
fraud in the transaction.  And the evidence showed
without conflict that the note had been purchased by
the plaintiff in the usual course of its business, for
value, and before maturity.  This shifted the burden on
to the defendant to show, so far as this alleged defense
is concerned, that plaintiff had knowledge or notice of
the infirmity of the transaction growing out of Buck's
alleged misrepresentations.  This burden the defendant
did not undertake to discharge, and there is no evidence
whatever in the record of any such knowledge or notice.
It being thus shown without conflict that, so far as the
defense resting upon what Buck said and did is con-
cerned, *prima facie*, plaintiff was a *bona fide* purchaser,
for value, of the note, without notice of Buck's misrep-
resentations, and defendant offering no evidence to
overturn the replication thus made out, by showing
notice of this alleged fraud, the court should have ex-
cluded all evidence going to support said pleas in refer-
ence to the motion renewed by plaintiff after all the evi-
dence in the case had been adduced.

The case below really turned upon the truth or falsity
of the plaintiff's replication upon which the defendant
took issue.  The plaintiff not having taken issue on de-
fendant's special pleas, and the defenses relied on not
being within the general issue presented by the parties,
it was essential to plaintiff's recovery that the aver-
ments of the replication be proved.  As we have seen,
the replication avers that the note first given was pay-
able to the Coal City Coal & Coke Company, and was by
that company indorsed to the plaintiff.  The evidence is
directly conflicting as to one of these averments, and
inferentially so as to the other.  The evidence for the
plaintiff goes in support of both; but the testimony of
the defendant is direct and positive that the original
note was payable to R. D. Johnston, and not to said
company; and this, in connection with evidence for
plaintiff tending to show indorsement by the payee to it,
affords some inference that the indorsement was by

[Alabama National Bank v. Halsey.]

Johnston, and not the company. Then the replication avers that the plaintiff purchased the original note, for value, before maturity, and without notice of the illegality of its consideration. The evidence for plaintiff tended to support these averments, but we cannot say there was no conflict in the evidence with reference to them. On the contrary, we find that the fact that a certificate for $10,000 of stock in said company was at the time of the negotiation attached to the note as collateral security for its payment,—taken in connection with the evidence of Captain Johnston, who was then president of the plaintiff bank, that he did not know there was any such note in existence until it was brought to his bank for discount, but that when the discount was made he was aware that the consideration of this $5,000 note was said $10,000.00 of stock in said company,—at least afforded some ground for a. conclusion on the part of the jury that the president's knowledge or notice of such consideration came to him at that time and in that transaction between the bank, acting by him, and the payee of the note, and was, therefore, the knowledge of or notice to the bank itself.

Again, the replication is intended to avoid the special pleas upon each and both of two considerations. First, by showing the bank had no notice of the infirmity of the original note, and purchased it for value, &c.; and upon this point of notice we have just seen the evidence was conflicting. And, second, by showing that defendant's promise to pay plaintiff, evidenced by the note sued on, is supported by a new, independent and legal consideration, and is therefore obligatory on defendant, though the consideration of the original note was illegal and plaintiff had notice of the fact at the time of the discount. This new consideration is supposed to arise upon the facts that the original note was indorsed to the bank, and that subsequently the bank at defendant's request took his note payable directly to it in lieu of the first note and indorsement, thereby releasing the indorser, from whom, it is insisted, a recovery might have been had, even though the consideration of the indorsed paper were illegal and known to be so. In this connection, we may concede it to be the settled law, that, while no number of mere renewals, and consequent extensions of the time for payment, of a promis-

sory note given upon an illegal consideration, will elim-
inate that infirmity, yet, if there be a consideration for
the new note other· than the renewal of, and extension
of the time for payment of the debt evidenced by, the
old one, such other consideration, whether of benefit to
the promisor or of detriment merely to the promisee,
will support the new contract, and entitle the payee
therein to recover upon it, notwithstanding the illegal-
ity of the original note, and that the release of an in-
dorser of the original illegal paper would ordinarily con-
stitute a new and sufficient consideration for the renew-
al note, since, in the absence of participation by the in-
dorsee in the illegal transaction out of which the consid-
eration for the note arises, he may recover against the
indorser, notwithstanding the illegality of the paper in-
dorsed, and this it seems though he had notice of the
illegality of the consideration of the note when he pur-
chased it.—Tied. on Com. Paper, § § 199, 259 ; 2 Rand.
Com. Paper, § § 536, 756 ; 1 Daniel Neg. Inst. § § 205-6,
669-a ; 669-b ; 2 Am. Eng. Ency. of Law, p. 385 ; *Cupp
v. McDougall*, 9 Mass. 1 ; *Torbett v. Worthey*, 1 Heisk.
(Tenn.) 107 ; *Cuthbert v. Haley*, 8 Term. Rep. 318 ; *Cul-
vert v. Williams*, 64 N. C. 168 ; *Wood, Murphy & Co. v.
Morgan & Duncan*, 67 Ala. 461, 468. But the evidence
here not only tends to ·show notice to the bank. of the
consideration for the original note, but also to show
that the contract of indorsement itself involved the do-
ing of an illegal act—the issuance of fictitious corpora-
tion stock,—and such act—the *issuance* of such stock to
plaintiff—was a part of the consideration moving to it
for discounting the paper. Defendant's evidence was to
the effect that the fictitious stock was ·to be issued to
him only upon the payment of the original note. Ac-
cording to the evidence for plaintiff, this note was pay-
able to the Coal City Coal & Coke Company, and was
brought to the bank for discount by that company, hav-
ing the certificate of shares of its stock amounting. to
$10,000 attached to it. This stock was thus held by the
company up to the moment it passed to the plaintiff,
along with the note. It had not prior to that moment
been *issued* by the company. It was then and there is-
sued as a part of the transaction in which the note was
discounted and as a part of the contract of indorsement,
and along with this contract its issuance was a part of

the consideration moving to the plaintiff for the payment it then made to the company. In other words, if the fact, as the jury had a right to ·find, was in line with this evidence, the plaintiff not only *participated* in the illegal act which constituted the consideration of the original note—the issuance of the fictitious stock—which, of itself, would leave the bank without any remedy against tbe indorser, (Tied. Com. Paper, § 259 ; *Armstrong v. Toller*, 11 Wheat. (U. S.) 258), so that the formal release of the indorser could not constitute any consideration for the renewal notes, but the contract of indorsement itself—considered as a new contract, independent of the note—involved the doing of an illegal act, and was thus tainted by illegality of consideration, bringing the case directly within *Williams v. Evans*, *supra*, even as between the bank and the Coal Company, rendering the contract on this ground also unenforceable by the indorsee against the indorser, and its release incapable of constituting a new consideration for the note sued on. Tne evidence is, therefore, to say the least, conflicting as to several material averments of the replication. It follows, of course, that the affirmative charge requested by the plaintiff could not properly have been given.

Charge 2 requested by plaintiff contravenes the well settled principle that mere renewals, however often repeated, of a promissory note, invalid because of illegality of consideration, do not heal the infirmity or prevent the maker from insisting upon it. *Ware v. Morgan*, 67 Ala. 461, 468.

Plaintiff's third request for an instruction was bad for several reasons. In the first place, there is no averment in the replication that the original note was made payable to R. D. Johnston. Then, too, the charge assumes or declares that the attaching of the stock certificate to the note, even though both were still held by the company, was an issuance of the stock to Halsey, and this notwithstanding the jury may have found that no stock was to be issued to Halsey until he paid the note. And, moreover, the charge would have tended to mislead the jury to the conclusion ·that mere renewals of a note, without claiming any defense to it, would eliminate original illegality of consideration.

The charges given at the instance of the defendant, in

effect, submit to the jury whether the facts averred in certain of the special pleas, which we have held good, are true, and also whether certain facts set up in the replication in avoidance of these pleas are true, and instructs them to return a verdict for the defendant if they should find the pleas to have been proven, and the replication not to have been proven. Clearly, there was no error in giving these charges.

For the error committed in overruling plaintiff's motion in respect to certain testimony of Halsey, pointed out above, the judgment must be reversed. The cause is remanded.