# Minge v. Clark, et al.

## Assumpsit.

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 510.)

1. *Corporations; Issuance of Stock; Statutory Provision.*—The provisions of section 234, Constitution 1901, and 3467, Code 1907, prevent a court from aiding in the enforcement of any contract the execution of which involves a disregard of such provisions, and, so far as it is appropriate to protect stockholders from improper discriminations in accepting payment for stock, the provisions of the same will be given such effect as to accomplish this purpose.

2. *Pleading; Demurrers; Admissions by.*—A demurrer to a pleading admits the allegations thereof.

3. *Same; Replication; Departure.*—Where the complaint sought a recovery for breach of contract to sell corporate stock, and defendant set up a breach by plaintiff in his refusal to deliver, the replication setting up that defendant had failed to do something else, which was no excuse for plaintiff's failure to deliver, was a departure from the complaint.

4. *Corporations; Stock; Contracts; Validity.*—The contract of sale considered and held invalid as involving an issue of stock within the prohibition of section 234, Constitution 1901, and section 3467, Code 1907.

APPEAL from Marengo Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Action by John H. Minge against W. C. Clark and others for breach of contract. From a judgment for defendant, plaintiff appeals. Affirmed, and application for rehearing denied.

The following is count A: Plaintiff claims of defendants the further sum of $5,000 for that heretofore, on, to wit, April 1, 1913, the Faunsdale Oil Mill was an Alabama corporation having a capital stock of $50,-000 and consisting of 500 shares of the par value of $100 each, and plaintiff was the owner and holder of 185 of such shares. On said day it was agreed by and between plaintiff and defendants that if the appropriate

action of the stockholders and directors of the corporation could be secured to divide among the stockholders $12,000 of the money then in the treasury of the corporation, and to reduce the capital stock from $50,-000 to $38,000; that plaintiff, after receiving his part of the $12,000 distribution, should sell to the defendants, and defendants would buy from plaintiff, his entire interest in the corporation for the sum of $4,440, to be paid by defendants to plaintiff in cash immediately upon said appropriate action of the stockholders and directors authorizing such reduction and distribution of capital stock being taken. Such appropriate action was duly taken on, to wit, April 20, 1912, and plaintiff did then and there offer to transfer and assign and set over to defendants his entire interest in said corporation and the certificates of stock therein standing in his name, subject to his right to receive his pro rata part of the $12,000 distributed and called upon defendants to pay him therefor the said agreed price thereof; and this they failed and refused to do, and have since continuously failed and refused to do; hence, this suit.

Plea 7: The alleged contract of sale from plaintiff to defendants, which is the foundation of this suit, was and is null and void, in this: In the year 1911 a corporation was organized in the state of Alabama under the name and style of the Faunsdale Oil Mill, and a large amount of the stock of said corporation was issued to plaintiff in this cause, and it is for an alleged contract of sale of all or a part of said stock by plaintiff to defendant which is the foundation of this suit. And defendant avers that the issuance of said stock to defendant was contrary to, and in violation of, section 234 of article 12 of the Constitution of Alabama, in this That said stock was not issued for money, labor done, or property actually received.

Replication 3 is as follows, which is filed to plea 7, and other pleas, separately and severally: That defendants were estopped to set up as a defense to this action any inadequacy in payment of said subscription to the capital stock of the Faunsdale Oil Mill, for that on, to wit, August, 1911, plaintiff and defendant Clark made the contract, of which a copy is hereto attached and made a part hereof, and pursuant to said contract, in August, 1911, organized a corporation under the laws of the state of Alabama, by filing the proper certificate in the office of the probate judge of Marengo county, and gave the corporation the name of the Faunsdale Oil Mill. Pursuant to said attached contract, said corporation immediately upon incorporation issued capital stock which purported to be fully paid up for $50,000, divided into 500 shares of the par value of $100 each. Three hundred and eighty shares were issued to Minge, and persons of his designation, and for this stock he paid by the conveyance to the corporation of the oil mill described in the attached contract, and referred to in the plea. One hundred and twenty shares of this stock were issued, 110 shares to W. C. Clark, and 10 shares to H. W. Cranford, at the request of said Clark, and, upon this stock being issued to Clark, he placed in the treasury of the corporation $12,000 for working capital. Immediately and contemporaneously with the organization of the corporation, and pursuant to the attached contract, Minge transferred to Clark 130 shares of that portion of the stock which was issued to him, so as to make the stockholding of Clark and his nominee stand at one-half of the total capitalization. This transaction was fully executed and completed before September 1, 1911. Subsequent to this transaction, the mill was operated through the crushing season of 1911-12, and in, to wit,

March, 1912, I. P. Pruitt, with full knowledge of just how and in what the stock subscription was paid, entered into an arrangement with Clark under which they agreed to purchase the entire interest of J. H. Minge in the corporation after the exact sum of money which was originally paid into the corporation had been withdrawn and distributed among the stockholders, as stated in count A of the complaint, and, with a view of accomplishing this purpose, the said Pruitt and Clark, acting together, induced Minge to consent to said reduction of the capital stock, and notices for the meeting by which the same was reduced was issued by said Pruitt, acting in the capacity of secretary and treasurer of the corporation.

LONDON & FITTS, and E. E. TAYLOR, for appellant.

DAVIS & FITE, and GEORGE PEGRAM, for appellee.

MAYFIELD, J.—Appellant sued appellees to recover damages for the breach of an agreement by which the defendants had agreed to purchase stock in a corporation from the plaintiff. The complaint contained the common counts, and one count for the purchase price for the sale and delivery of the stock, but the real cause of action is set out in count A of the complaint.

This is an appeal on the record, and no point is made, except as to the sufficiency of special pleas to count A, plea 7, and replication 3, which will show the real questions of law involved on this appeal.

(1) The main defense set up by the special pleas was that the agreement by which plaintiff agreed to sell the stock involved a violation of section 234 of the Constitution, and of section 3467 of the Code, which is a

restatement of the constitutional provision. The constitutional provision reads as follows: "No corporation shall issue stocks and bonds except for money, labor done, or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held after thirty days' notice, given in pursuance of law."

This section has been several times construed by this court, and its object, purpose, and effect declared. In *Fitzpatrick's Case,* 83 Ala. 604, 606, 607, it was said by Stone, C. J.: "The Constitution, in terms, inhibits the issue of fictitious stock; that is, stock which has no valuable thing, or corporate assets, to rest on, and of which it is the representative. If it represents nothing, and has nothing to stand on, it is fictitious, it is fraudulent, it is unconstitutional."

"It behooves constituted authority to keep well abreast with the many inventions which modern cupidity has wrought out, and which, perhaps, more than any other agency, have called into exercise pernicious principles which threaten the overthrow of organized government. In this highly conservative, yet restraining, spirit, the principle, constitutional and statutory, on which this case mainly hinges, had its origin, and finds its justification. Let us not, by timid interpretation, impair the strength of this bulwark erected by our Constitution makers against the frauds which have become the reproach of the age we live in."

The same provisions were again construed in *Tutwiler's Case,* 89 Ala. 391, 7 South. 398, to the same ef-

fect, and again in *Elyton Land Company's Case*, 92 Ala. 407, 9 South. 129, 12 L. R. A. 307, 25 Am. St. Rep. 65. In all these cases these provisions were held to have been intended "to prevent the court from lending their aid for the enforcement of any contract or obligation the execution of which involves a disregard of those regulations, and that, so far as they are appropriate for the protection of stockholders from improper discriminations in accepting payments for stock, those regulations are accorded such effect and operation as to fully accomplish this purpose of their enactment."

These cases have been repeatedly followed, and we have no disposition to depart therefrom.

(2) If these special pleas complained of were true —and on demurrer they must be so treated—the court will not enforce such agreement, either specially, or by the award of damages for the breach of such executory agreement. To enforce such agreements would be to ignore and disregard the declared purpose of the constitutional and statutory provisions.

The replications, in so far as they were not general, were no answers to the plea. In fact, it would be difficult to conceive of a special replication which could confess and avoid pleas which set up, as a defense, that the plaintiff was attempting to have the court aid him in enforcing an agreement or contract which both the Constitution and the statutes prohibited and in terms declared to be void. The plaintiff insists that the contract or agreement relied upon is not void as to these parties, but only as to the corporation, its stockholders, and its creditors; that the agreement is not void as between these parties.

We cannot agree to this contention. It is made to appear from the pleas and the replications that the parties to this action were parties to the agreement to

effect the very thing which the Constitution and the statutes forbid. If the contract was executed, the courts would not relieve either from his bargain because the agreement was void; but, as it is executory, and the plaintiff is seeking to have the courts aid him in enforcing it, they will decline to lend him such aid, although the defendants were parties to such illegal agreement.

The special replications to these pleas were no answer thereto. The replications, as well as the pleas, showed that plaintiff was attempting to recover damages of the defendants, because they would not perform and carry out an agreement which was clearly in violation of the constitutional and statutory provisions in question.

(3) There were other pleas setting up a breach by the plaintiff in that he refused and failed to deliver the stock. To this plea or pleas, the plaintiff replied that the defendants had failed to do something else, which was no excuse for the failure to deliver the stock purchased. Such replications would be a departure from the case alleged in the count which the pleas answered, and would allow a recovery for a different breach than the one complained of in the count.

There was no error in any of the rulings on the pleadings of which the plaintiff (appellant here) can complain. To have allowed a recovery in this case, on the face of the pleadings, would have aided one of the parties to enforce a contract which was expressly prohibited and declared void by both the Constitution and the statutes of the state.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and DE GRAFFEN-RIED, JJ., concur.

ON APPLICATION FOR REHEARING.

PER CURIAM.—(4) Counsel for appellant have evidently mistaken the opinion and holding of the court. It is not decided, and was not intended to be said in the opinion, that a sale of stock in a corporation was void, because, when the stock was issued, it was issued in violation of the constitutional provision or statute, if the stock actually had some value. This case is not like the case of *Beitman v. Steiner Brothers,* 98 Ala. 241, 13 South. 87, but is like the case of *Williams v. Evans,* 87 Ala. 725, 6 South. 702, 6 L. R. A. 218, which was distinguished from the *Beitman Case* in the opinion in the latter case, where it was said: "This case is clearly distinguishable in the matter under consideration from that of *Williams v. Evans,* 87 Ala. 725 [6 South. 702, 6 L. R. A. 218]. The enforcement of the contract there sued on necessitated and involved the doing of an illegal act. The plaintiff had subscribed for stock in a corporation which undertook to issue $5 of stock for every dollar of its actual capital. Before the stock was issued, however, 'plaintiff sold $1,000 (or 10 shares) of the original stock, and gave the defendant an order on the corporation to issue to defendant 50 shares of said company's stock, which was the amount called for by the $1,000 of original subscription, and to transfer the same to the defendant on the books of the company.' The sale of this stock to be issued, the illegal issuance being necessary to a consummation of the contract of sale, was held invalid; the decision being expressly put on this ground, and the court saying: 'A contract which contemplates the violation of a statute, or a Constitution, as a mode of executing such contract, is illegal and void. It is based on an unlawful consideration, and, if executory, cannot be enforced.'"

—*Beitman v. Steiner Bros.,* 98 Ala. 241, 248, 13 South. 87, 89.

That is the exact case shown by this record. While the original stock of this corporation had been issued, there was no contract to sell this original stock. The contract sued on was to take out of this original corporation nearly, if not quite, all of its paid-in capital give it to the plaintiff, and then issue new stock, or scale the old, from $50,000 to $38,000, thus depriving the new issue of stock of nearly, if not quite, all of its real value; and then, and only then, was there to be a sale of stock by the plaintiff to the defendant. In other words, there was to be no sale of stock unless this contract, which involved a violation of the Constitution and statutes, was carried out. The contract sued on clearly contemplated a violation of the Constitution and statutes in taking out of the capital stock practically all that had been paid in, which had any real value, and in issuing new stock in lieu of the old, which would practically have no real value, though nominally of the amount of $38,000, instead of $50,000, as originally organized. In other words, stock was to be issued and sold nominally to the amount of $38,000, in lieu of the original $50,000, which had but little, if any, real value. The $12,000 to be taken out of the capital of the corporation, represented nearly all the value of the $50,-000 of the original stock. Taking this $12,000 out, would leave the remaining $38,000 without much, if any, real value.

It was evidently just such preferences as this that the Constitution and the statutes were intended to prevent.