L. E. TRAMP, Appellee, v. EVANS MARQUESEN, Appellant.

**CORPORATIONS:** Illegal Stock Subscription. A stock subscription, violative of a statute, in that the purchase price was fixed at less than par value, is non-enforcible.

*Appeal from Audubon District Court.*—E. B. WOODRUFF, Judge.

APRIL 6, 1920.

SUIT to recover on a contract of subscription for corporate stock, the plaintiff being the assignee of the corporation. The defendant refused to take the stock, and refused to pay therefor. His principal defense is that the contract of subscription was violative of our statute and void. The trial court held, in substance, that such statutory provisions were for the public benefit only, and were not available to a party to the transaction, as a defense against the performance of his contract. Judgment was accordingly entered for the plaintiff, and defendant appeals.—*Reversed.*

*Graham & Graham* and *E. M. Willard,* for appellant.

*H. M. Boorman* and *Mantz & White,* for appellee.

EVANS, J.—I.   The plaintiff was the owner of a brick and tile plant, located at Audubon.  For the purpose of disposing of the same, he and defendant and others organized a corporation, for the purpose of taking over said tile plant. The plaintiff had put a price thereon of $20,000.   The capital stock of the corporation was fixed at $100,000, divided into 1,000 shares, of a par value of $100 each.   Both plaintiff and defendant were more or less active in the promotion of the company.  The contract of subscription with the defendant provided for the delivery of 30 shares to him for a subscription price of $2,000.   The plaintiff became the assignee of the subscription contract.  The illegality urged by defendant as his defense is that the subscription price was fixed at less than par value, in violation of law, and that the contract was not, therefore, enforcible.

The particular sections of our statute which bear upon the question include the following:

"Sec. 1641-b. That from and after the passage of this act no corporation organized under the laws of the state of Iowa, except building and loan associations as defined and provided for in Chapter 13, Title IX of the Code, shall issue any capital stock or any certificate or certificates of shares of capital stock, or any substitute therefor, until the corporation has received the par value thereof. *  *  * "

"Sec. 1641-d. *  *  * The capital stock of any corporation issued in violation of the terms and provisions hereof shall be void, and in a suit brought by the attorney-general on behalf of the state of Iowa in any court having jurisdiction, a decree of cancellation shall be entered; and if the corporation has received any money or thing of value for the said stock, such money or thing of value shall be returned to the individual, firm, company or corporation from whom it was received, and if represented by labor or other service of intangible nature, the value thereof shall constitute a claim against the corporation issuing stock in exchange therefor."

"Sec. 1641-f. Any officer, agent, or representative of a corporation who violates any of the provisions hereof shall, upon conviction, be fined not less than $200 nor more than $1,000, and be imprisoned in the county jail for not less than 30 days nor more than 6 months."

If the foregoing statutes are to be deemed applicable, they are quite controlling of the question raised. Because of these sections, no one connected with the corporation could have authority to contract for the sale of its stock at less than par value. Manifestly, therefore, the defendant, as a stock subscriber, could never have enforced specific performance of the subscription contract. It would seem to follow, of logical necessity, that, if he could not legally enforce it, he could, at least, abandon it. As a basis for his action, the plaintiff, as assignee, pleaded that he had caused tender of the stock to be made to defendant before suit and

a demand of the contract price. If no one could have authority to make such a contract for the corporation, how could authority be had to tender performance of such a contract? What authority could anyone have to deliver, on behalf of the corporation, its stock at less than par value? These queries are only steps in the reasoning. They lead irresistibly to the final conclusion, not only that the defendant could not enforce the subscription contract, but that the same was not enforcible against him, either by the corporation or by its assignee. As between plaintiff and defendant, they were both promoters and *particeps criminis*. The law simply leaves them where they left themselves. *Sherman v. Smith,* 185 Iowa 654; *Thronson v. Universal Mfg. Co.,* 164 Wis. 44 (159 N. W. 575); *Lee v. Cameron,* (Okla.) 169 Pac. 17; *Minge v. Clark,* 190 Ala. 388 (67 So. 510).

Assuming, therefore, that the rights of the parties are governed by the sections of the statute above quoted, we are very clear that the contract sued on is not enforcible by either party thereto.

II. The sections of the statute which we have above quoted are, in terms, applicable to corporations organized under the laws of this state. The corporation under consideration, though organized in this state, and for the purpose of doing business at Audubon in this state, was organized, nevertheless, under the statutes of South Dakota. Neither party proved or pleaded the statutes of that state. Each claims in argument that the presumption must obtain that the statutes of the two states are alike, as regards the question at issue. We shall, therefore, so assume. Application for permit to do business in this state was made to and granted by the secretary of state, under the provisions of Code Section 1637 *et seq.* The application for permit was in the form of a resolution, and, pursuant to Section 1637, contained the following proviso:

"It being understood and hereby agreed that the certificate or permit, when issued, shall be subject to and subject this company to all the provisions of the statutes of Iowa, relating to organization for pecuniary profit."

The permit granted contained the same proviso.

Whether we regard the legality of the contract as one to be determined under the statutes of South Dakota, or under our own like statutes, the fact remains that the subscription contract entered into was illegal and void, under the statutes of both states.

The judgment below must, accordingly, be—*Reversed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.