288 So.2d 110

**James W. MATTHEWS**

v.

**Mary MATTHEWS and Lois Matthews,
a minor.**

**SC 86.**

Supreme Court of Alabama.

Sept. 27, 1973.

Rehearing Denied Jan. 24, 1974.

Russell, Raymon & Russell, Tuskegee, for appellees.

Gray, Seay & Langford, Tuskegee, for appellant.

COLEMAN, Justice.

Plaintiff appeals from a decree granting him relief in a suit to establish in his favor a resulting trust in real property. Respondents have cross assigned errors.

The bill of complaint was filed February 20, 1970. In paragraphs numbered in the bill as follows, complainant makes averments to the following effect:

1. He is sui juris and a resident of Macon County; that respondent Mary Matthews is sui juris and a resident of Dale County; that respondent Lois Matthews is sixteen years old, is the daughter of respondent Mary Matthews and Herman Matthews, deceased, and is in the care and custody of her mother with whom Lois resides.

2. The property involved is Lot 27 of a subdivision in Macon County.

3. On April 4, 1950, the lot was vacant and unimproved. On that date complainant entered into a written contract with a construction company and the owner of the lot whereby the company agreed to construct a dwelling house on the lot and complainant agreed to pay $8,300.00 therefor. Complainant paid $350.00 earnest money and agreed to pay the balance of the purchase price.

4. For convenience of the parties to the contract, title to the lot was transferred to complainant's nephew, Herman Matthews, then living, on November 15, 1950, at which time construction of the dwelling house had been completed. Herman Matthews has never claimed the lot to be his nor asserted any right or interest therein. Complainant has occupied the house continuously since said purchase, has maintained the house in a state of repair and has treated the same as his own. Complainant paid the $350.00 earnest money and has paid each and every installment of the balance of the purchase price and continues to pay the same as they mature.

5. On June 9, 1968, Herman Matthews died intestate leaving as his sole heir the said minor child, respondent Lois Matthews, and his widow, respondent Mary Matthews. "No administration has been had upon the estate of said decedent, and he died seized and possessed of the said real property."

6. Complainant offers to do equity.

Complainant prays that upon a final hearing the court will:

1. Ascertain and establish a resulting trust in favor of complainant in and to said lot.

2. Divest all title to said lot out of respondents and vest title in complainant.

3. Grant to complainant such other and general relief to which he is entitled and which the court may deem proper.

Guardian ad litem was appointed for the minor respondent.

Respondents filed demurrers which the court overruled.

Respondents filed an answer. They admit the averments of paragraphs 1, 2, and 5 of the bill of complaint and deny the averments of paragraphs 3 and 4.

3. Complainant has occupied the premises in suit from November 15, 1950, as the tenant of Herman A. Matthews, until June 9, 1968, and, since said date, as the tenant of respondents; that as rent, complainant has paid the payments due on the mortgage indebtedness from Herman A. Matthews to Alabama Exchange Bank; and that said mortgage is for the principal sum of $8,300.00, is dated February 9, 1951, and is recorded in the "Probate Office of Macon County, Alabama."

4. Said lot was conveyed to Herman A. Matthews by warranty deed dated November 15, 1950, and recorded February 20, 1951. Complainant knew that the lot was owned by Herman A. Matthews. Complainant, since 1951, has assessed the property for taxes in the name of Herman A. Matthews and after his death in 1968 in the name of " 'Herman A. Matthews' estate'." "That complainant admits in his Bill of Complaint that he knew on November 15, 1950, that title to said property was taken in the name of Herman A. Matthews. However, over 19 years passed before he filed his Bill of Complaint in this cause. Therefore, complainant is barred from bringing this action by the statute of limitations of ten years for the recovery of real estate. The complainant, further, waited until more than twenty months after the death of Herman A. Matthews to bring this proceeding, allowing Respondents to lose the testimony of Herman A.

Matthews, deceased. Respondents further allege that complainant is now barred by laches from maintaining this proceeding."

It appears that the Herman Matthews referred to in the bill and the Herman A. Matthews referred to in the answer are one and the same person.

### Decree.

After hearing testimony ore tenus, the court rendered final decree which, as here pertinent, is to the following effect.

The court finds that complainant entered into a contract with Southern Construction Company on April 4, 1950, to purchase the lot together with house to be constructed thereon for $8,300.00. Subsequently, complainant represented to the Alabama Exchange Bank that complainant was the father of Herman A. Matthews, a member of the United States Armed Forces at the time and entitled to a "VA insured loan"; that the bank, acting through its president, understood that the house and lot were being purchased as a home for the father of Herman A. Matthews, when in fact, the bank had been misled and the property was being purchased for the use of Herman A. Matthews' uncle, the complainant. Therefore, title to said property was taken in the name of Herman A. Matthews and he executed a "V. A. Insured Mortgage" to the bank for $8,300.00 dated February 9, 1951, and he and complainant executed the note secured by said mortgage. "Therefore, the Court is of the opinion that the Complainant, through his own misrepresentation obtained the use of a four per cent (4%) Veterans Administration Loan when, in fact, he was not entitled to such loan and at the time, would have had to pay at least six per cent (6%) interest on any money that he may have borrowed to purchase a home with. For these reasons, the Court if (sic) of the opinion that the Complainant does not come into this Court with clean hands."

The court further states that the court "is satisfied from the evidence" that the mortgage to the bank has been paid; however, the testimony is in conflict as to whether Herman A. Matthews sent money to complainant which was to be applied upon the mortgage payments and whether the complainant was making the payments as rent.

The court further found that at this time the legal title is in respondents and stated: "In view of the facts and the equities of this cause, the Court is of the opinion that title to said real estate should be vested in the Complainant, if the Complainant will do equity in this cause by paying to the Respondents the benefits he received on the lower interest rates on said mortgage by virtue of his obtaining through deception the benefits of the Veterans Administration loan to which veteran, Herman A. Matthews, deceased, was entitled."

The court decreed to the following effect:

1. That complainant comes into court with unclean hands due to the fact that he obtained the benefits of the V. A. loan granted to his nephew at four per cent per year, and due to complainant's inequitable conduct, he saved at least $2,408.00 in interest, being the difference in interest between a 4% loan and a 6% loan for twenty years.

2. That if complainant will pay to the register on or before July 15, 1972, the sum of $2,408.00, to be paid to respondents to do equity to them, then complainant is entitled to have a resulting trust declared and title vested in him.

3. Upon payment of said sum into court, the register is ordered to report the same to the court, and the court will enter a final decree vesting title in complainant. If complainant has not paid said sum into court by July 15, 1972, the court will enter

a final decree dismissing complainant's bill for his failure to do equity.

### On the appeal.

Complainant assigns as error the action of the court in ordering appellant to pay into court the sum of $2,408.00 to be paid to respondents.

Among the reasons relied on by complainant in support of this assertion of error is the rule that affirmative relief can be granted to a respondent only on a cross bill, and the rule that that relief granted to a party in equity must be within the scope of the issues as framed by the pleadings.

In Sturdivant v. Sturdivant, 276 Ala. 390, 162 So.2d 484, this court reviewed a decree in a suit for divorce. The complainant wife prayed for divorce and that the court award to her as permanent alimony the one half interest in a house and lot which the respondent husband claimed he was entitled to have her convey to him under an agreement the parties had made. The respondent filed a cross bill in which he prayed that complainant be required to deliver a deed to him for his interest in the property. The trial court granted a divorce to the complainant but dismissed the cross bill. Finally, however, the trial court awarded the property to complainant, but subject to a lien for $3,300.00, testified to by respondent as money spent by him in building the house. He did not pray for a lien on the house and lot.

This court, in *Sturdivant*, reversed and held that the award to respondent of the lien on the house and lot was error. This court said:

"Affirmative relief can be granted only on a cross bill. Marshall v. Rogers, et al., 230 Ala. 305, 160 So. 865; Hendrix v. Southern Ry. Co., 130 Ala. 205, 30 So. 596. The cross bill having been dismissed, there was no basis for the court to grant to the respondent the affirmative relief it sought to give him.

"The awarding of a special relief to the respondent granting the lien in his favor was not within the scope of the pleadings as framed. That portion of the decree is erroneous and is hereby reversed, and is remanded to the lower court for such further proceedings as may be undertaken by appropriate pleading and proof in support thereof, if desired. See Penny v. Penny, 247 Ala. 434, 24 So.2d 912." (276 Ala. at 392, 162 So.2d at 486)

In the instant case, respondents did not file a cross bill. Respondents did not pray for the award of any judgment against complainant. According to the authority of the cases cited above the award of a judgment against complainant and in favor of respondents was not supported by a cross bill and was not within the scope of the pleadings as framed. Accordingly, the award of the judgment against complainant is due to be reversed.

In reply to complainant's contention, respondents say that they filed no cross bill because they did not seek affirmative relief; that it was respondents' position that there was no resulting trust, or that relief should be denied complainant because of laches or the statute of limitations; and that, under their answer, respondents could get complete relief, to wit, the denial of any relief to complainant. Respondents say also that under the evidence the court could declare a resulting trust in favor of complainant for less than all of the complete fee simple estate.

Respondents cite Hinds v. Federal Land Bank of New Orleans, 235 Ala. 360, 179 So. 194, as authority for the proposition that a party who is able to obtain under his answer all the relief to which he is entitled, cannot maintain a cross bill. *Hinds* does support respondents proposition.

*Hinds,* however, was decided prior to the amendment of Equity Rule 26; effective December 17, 1954. See Kendall v. Cornellison, 264 Ala. 16, 84 So.2d 494, where this court said:

"Other grounds of appellant's demurrer, addressed to the various aspects of the cross-bill and making the point that the relief prayed for is obtainable without a cross-bill, were properly overruled. Equity Rule 26, as last amended, 261 Ala. XXXIX, expressly provides that a cross-bill 'will not be subject to objection or demurrer on the ground that the relief sought in it is available in that suit without a cross-bill, if the relief is such that it is enforceable in equity, * * *.' " (264 Ala. at 20, 84 So.2d at 497)

In *Hinds,* complainant filed a statutory bill to quiet title to 87 acres of land. Respondent A. M. Hinds, Jr. answered, denied that complainant was in peaceable possession, avowed title in himself to one half interest in the land under a certain described deed, and prayed that the court would not only dismiss complainant's bill but would also grant relief to "'this Cross-Complainant by decreeing . . .'" that he is owner of legal title to said one half interest in the described land. This court, under the rule which controlled prior to December 17, 1954, held that demurrer was correctly sustained to the cross bill of A. M. Hinds, Jr., because, in the statutory proceeding, he could get all the relief he was entitled to under his answer. This court said:

" . . . So, also, 'In a proceeding of this character it is not necessary for the complainant to prove title to all the land claimed by him, and described in the bill, in order to obtain relief. The statute contemplates the granting of relief as to such of the lands as the complainant shows title to, and when it appears that the title to a part of the land

is in the complainant, while that to the remainder is in the defendant, the court should ascertain and declare these facts, and decree accordingly.' Friedman & Loveman v. Shamblin, 117 Ala. 454, 457, 23 So. 821; Grayson v. Muckleroy, supra [220 Ala. 182, 124 So. 217].

"It is only where the defendant seeks relief outside of the scope and purpose of the statute that he must do so by cross-bill, and then must set up an independent equity, Grayson v. Muckleroy, supra; Reeder v. Cox, 218 Ala. 182, 118 So. 338.

"Where a party can obtain all the relief to which he is entitled under his answer he cannot maintain a cross-bill. Lamar v. Lincoln Reserve Life Ins. Co., 222 Ala. 61, 131 So. 223; Pritchett v. Dixon, 222 Ala. 597, 133 So. 283; McCaleb v. Worcester, 224 Ala. 360, 140 So. 595; Becker Roofing Co. v. Meharg, 223 Ala. 163, 134 So. 864." (235 Ala. at 362, 179 So. 194 at 196.)

■ The instant suit is not a statutory proceeding. As respondents say, the only relief which they sought was dismissal of complainant's bill and denial of any relief to him. The relief granted to respondents, however, goes beyond denial of relief to complainant. The court did not deny relief to complainant, but granted the relief sought on condition that complainant pay to respondents an amount of money equal to the difference between interest at 4% and 6% on the amount of the mortgage debt for the period covered by the mortgage. We incline to the view and hold that the relief given to respondents by the condition imposed is not within the issues as framed by the pleadings in the instant case.

*On cross appeal.*

Respondents cross assign as error the action of the court in granting relief to complainant. Respondents argue that, for three reasons, the court erred in granting

complainant relief by ordering that title should vest in him on his performance of the condition stated. The first reason argued is that complainant comes into court with unclean hands in that he fraudulently represented to the bank that the nephew was his son and in that he sought to obtain the benefits to which a veteran is entitled under the statutes of the United States when complainant was not entitled to those benefits according to those statutes. The second and third reasons argued are that complainant's claim to a resulting trust is barred by the ten-year statute of limitations against actions for recovery of lands, and that complainant is also barred by laches.

Consideration of respondents' first contention that complainant is not entitled to relief because of unclean hands is hereinafter set out. In view of the result reached as to that contention, consideration of respondents' second and third contentions is pretermitted.

Complainant contends that cross assignment 3 is insufficient because it is too general. That cross assignment recites:

"3. The trial court erred in its final decree in granting complainant any relief under his bill of complaint. (Tr. 59–61)"

■ In considering the defect of generality charged against an assignment of error this court said:

"In Robinson v. Murphy, 69 Ala. 543, 545, the assignment was: ' "the court below erred in the final decree rendered Oct. 8th, 1881." ' This court said that the assignment is very general, yet it conforms to the long practice in this court, and that, when the decree is assailed as erroneous in the whole, an assignment in the general terms of this assignment must be accepted as conforming to the rules of practice. See Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 140, 156, 47 So.2d 455, Paragraph [9]." Bryan v.

W. T. Smith Lumber Co., 278 Ala. 538, 542, 179 So.2d 287, 291. "

In a more recent case this court said:

"Assignment of error 6 is to the effect that the court erred in rendering the decree in favor of the appellees (respondents).

"Where a decree is a single unit and is erroneous in any respect, the error infects the entire decree and an assignment of error in general terms is sufficient to invite review. (Citations Omitted)" ' Powell v. Powell, 285 Ala. 230, 233, 231 So.2d 103, 105.

See: Murphy v. Pickle, 264 Ala. 362, 87 So.2d 844; Wiggins v. Stapleton Baptist Church, 282 Ala. 255, 210 So.2d 814; Pruett v. State ex rel. Colbert County, 283 Ala. 33, 214 So.2d 310; Auto-Owners Insurance Company v. Stokes, 284 Ala. 537, 226 So.2d 320.

■ The instant decree grants relief to complainant in one particular only; i. e., vests title in him; and the decree grants nothing more to complainant. If granting this relief is error, the decree is erroneous in the whole. Under the authorities cited, cross assignment 3 is sufficient to invite review.

Complainant cites Purvis v. Ennis, 258 Ala. 174, 61 So.2d 451, where this court held too general and insufficient an assignment that " 'The Court erred in denying Appellant relief on her cross-bill.' " This court held that the trial court did not err in several particulars, to wit: in denying the widow exemption of $2,000.00 in lieu of homestead; in refusing to allow her to recover moneys she had paid in discharging cost of husband's last illness, his burial, payment of costs of improvements on the land, insurance premiums, and principal of mortgage debt, and as to other items. The relief sought embraced more than one item. Error in refusing relief as to one item would not constitute error in denying relief as to another item. The decree was not a

unit. The assignment was not sufficient within the rule above referred to.

The question is presented whether complainant is entitled to the benefit of a resulting trust arising out of a transaction wherein complainant violated the express terms of a statute of the United States.

Complainant says in brief:

". . . Appellant sought and was granted a declaration of a resulting trust. . . ."

This court has said:

"A resulting trust, the holding of title by one with beneficial ownership in another, is a creature of equity, based upon the prima facie presumption that he who pays the whole or an aliquot part of the purchase price for lands becomes the beneficial owner. The doctrine does not rest on an express, but on an implied, agreement, by which the title is taken in the name of another as matter of convenience. *No tort or breach of duty is involved in this form of trust.* The conveyance, as made, may be in keeping with the common purpose of all parties." J. A. Ownes & Co. v. Blanks, 225 Ala. 566, 567, 144 So. 35, 36.

Complainant is seeking the aid of equity to obtain the enforcement, or specific performance, not of an express but of an implied agreement by which title is to be taken out of the heir and widow of complainant's deceased nephew and vested in complainant. The evidence shows that all arrangements for buying the land and borrowing the money were made by complainant. Herman Matthews was in the military service and overseas at the time he signed the mortgage. Title was taken in the name of the nephew. The property has been assessed for taxation in the name of the nephew every year since the purchase. The assessment has been made by complainant. With respect to the purchase and mortgage, complainant testified:

"Q Are you telling the Court when you bought the house Herman was not to have any interest at all in the house?

"A The point about it, he was to make the deed over to me.

"Q Herman was not to have any interest in the house?

"A Well, yes that was going to be his home. It was always that way and it was his home.

"Q It was to be his home?

"A Our home, the family.

"Q The family home?

"A Yes.

"Q Was that the understanding Herman had when he signed the mortgage?

"A He said that after he come home he was going to make the payments over to me.

"Q When the transaction was entered into and closed it was his understanding he was to have a home there, is that right?

"A Yes.

". . .

"Q You knew that it was necessary for Herman to sign the mortgage and the note?

"A Yes, so I wouldn't have to get such heavy payments.

"Q In other words, you knew that the bank understood that Herman was your son?

"A No, I didn't.

"Q But you knew he had to sign for you to get it, you couldn't get the loan without him signing?

"A Yes, in order to get the long term loan."

With reference to the federal statute here involved, the Supreme Court of Georgia has said:

"4. The beneficent purpose of loans made and guaranteed by Federal Agencies under and pursuant to the Servicemen's Readjustment Act of 1944, 58 Stat. 284, 291, § 500 et seq., 38 U.S.C.A. § 694 et seq., was to enable a veteran of the Second World War to obtain guaranteed long-term, low-interest-rate loans, to be used in purchasing residential property or in constructing a dwelling on unimproved property *owned by him* to be occupied as *his home*, and intended solely to aid the veteran in the establishment of a home. Young v. Hampton, 36 Cal.2d 799, 228 P.2d 1, 5, 19 A.L.R.2d 830, 835. By 58 Stat. 300, § 1500, 38 U.S.C.A. § 697(a), the provisions of Public Law No. 262, Seventy-fourth Congress, as amended, 38 U.S.C.A. § 454a, are made applicable to the Servicemen's Readjustment Act of 1944, and by the latter section it is provided that the benefits of veterans under this act shall not be assignable. See, in this connection, Gowanda Cooperative Saving & Loan Association v. Gray, 2 Cir., 183 F.2d 367; Bradley v. United States, 10 Cir., 143 F.2d 573; Kauffman v. Kauffman, 93 Cal.App.2d 808, 210 P.2d 29; Tompkins v. Tompkins, 132 N.J.L. 217, 38 A.2d 890." Glosser v. Powers, 209 Ga. 149, 71 S.E. 2d 230, 231.

The conclusion seems inescapable that complainant proceeded under and now seeks the benefits of a transaction which violates the statutes under which he sought to obtain benefits. To obtain the benefits, complainant seeks to enforce a resulting trust to accomplish an illegal purpose. The Court of Common Pleas of Cuyahoga County, Ohio, has said:

"It is generally true that equity will not at the instance of a beneficiary effect by way of a resulting or a constructive trust the accomplishment of a purpose which, because of illegality or violation of public policy, is beyond the powers of an express trust. . . ." State ex rel. Squire v. Central United Bank, 4 Ohio Supp. 269, 4 Ohio Opinions 485, 492.

This court has said:

"Where one seeks equitable relief and the aspect of unconscionable conduct develops in the course of the trial, the court may apply the 'clean hands' doctrine sua sponte. McInnis v. Sutton, 260 Ala. 432, 435, 70 So.2d 625; Baird v. Howison, 154 Ala. 359, 45 So. 668; Moore v. Hawk, 270 Ala. 684, 688, 121 So.2d 904; 30 C.J.S. Equity § 97, p. 1031. The unconscionable character of the transaction on a complainant's part need not be pleaded or set up as a defense to support evidence of unclean hands, for in his respect, equity is not so much concerned with exactitude in pleading, as it is with promoting fair play and justice. . . ." Daniel v. Haggins, 286 Ala. 409, 410, 411, 240 So. 2d 660, 661.

In Glover, Admr. v. Walker, 107 Ala. 540, 18 So. 251, complainant sought to enforce a vendor's lien for purchase money of land which complainant's intestate had conveyed to respondent by conveyance made to defraud complainant's creditors. The creditors were not party to the suit. In denying relief, this court said:

"It is well settled, that conveyances, or gifts, made to hinder, delay, or defraud creditors, are valid and operative between the parties when fully consummated, and that neither party can rescind or defeat them. In Williams v. Higgins, 69 Ala. 523, which was a real action in the nature of ejectment, the plaintiff exhibited, as the basis of his recovery, the deed from the defendant, which was fair on its face. The deed was made, as appeared by the evidence, to hinder, delay and defraud the creditors of the grantor. The defendant, to avoid his own conveyance, set up his fraud, his illegal and immoral purposes in the execution of the conveyance. The

court held, that he could not become the actor and set up such a defense, to release himself from the toils of his own vicious invention. As was there said, 'No court has as yet given such assistance. Truth and fair dealing are rules of universal obligation. If men in consummation of frauds, employ instruments, binding and conclusive in their legal operation and effect, it is sound reason, good policy, sheer justice, to leave them where they have placed themselves, bound as they have bound themselves, without assistance from the courts to unloose them, when it becomes their interest to be unloosed, encouraging them and others to commit similar frauds.' . . . Here, an equitable trust is sought to be raised, and is by the contention of the appellant, declared to arise out of a transaction confessedly actually fraudulent. A vendor's lien, such as is sought to be here enforced, does not spring from, or depend on the contract or agreement of the vendor and vendee. Unless excluded by their own agreement, the law raises a vendor's lien on the principle, that one man, in good conscience, ought not to get and keep the estate of another, without paying for it. The vendee stands in the relation of a trustee for the vendor,—holding the legal estate, charged with a trust for the payment of the purchase money. Shorter v. Frazier, 64 Ala. 74. But, the rule is of universal recognition that a court of equity will never imply or enforce a trust, springing out of a transaction, in which the party seeking to enforce it, has been guilty of fraud and immoral conduct. Brantley v. West, 27 Ala. 551.

"In King v. King, 61 Ala. 482, this court said, 'The maxim, *in pari delicto melior est conditio possidentis*, applies in courts of equity, as well as in courts of law; and either court, leaves a debtor, guilty of fraud on his creditors, to the consequences of that fraud.'

"In May v. May, 33 Ala. 205, the court held, that while a court of equity will not allow a grantee in an absolute conveyance, to hold property discharged of a trust which by his consent was attached to a conveyance and which he agreed to fulfill, *the transaction being fair and lawful on the part of the grantor*, yet it will not aid him in carrying out and effecting an illegal arrangement, by which he made absolute conveyance of his property for the purpose of defrauding his creditors, upon the private verbal agreement of the grantee to reconvey the property, or allow it to be redeemed. The court said: 'When parties enter into such arrangements, a court of equity does not interfere between them, but leaves them where they have placed themselves.' " (107 Ala. at 545, 546, 547, 18 So. at 253)

This court has said:

". . . A contract which contemplates the violation of a statute, or a Constitution, as a mode of executing such contract, is illegal and void. It is based on an unlawful consideration, and, if executory, can not be enforced." Williams v. Evans, 87 Ala. 725, 727, 6 So. 702, 703.

See to same effect: Elyton Land Co. v. Birmingham Warehouse & Elevator Co., 92 Ala. 407, 416, 9 So. 129; Davis v. Montgomery Furnace & Chemical Co., 101 Ala. 127, 129, 8 So. 496; Alabama National Bank v. Halsey, 109 Ala. 196, 19 So. 522; Smith v. Alabama Fruit Growing & Winery Assn, 123 Ala. 538, 26 So. 232; Minge v. Clark, 190 Ala. 388, 395, 67 So. 510.

Complainant does not appear to deny that he seeks to enforce an implied agreement which is in violation of the statute, but complainant says that the unclean hands maxim is relevant only to rights between parties to the action; not between one party and a third party not party to the suit. It is true that as to some instances of alleged private fraud against one not party to the suit, this court has declined to apply the doctrine of unclean hands against a party seeking relief. Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73; Vinson v. Vinson, 262 Ala. 388,

79 So.2d 31; Daniels v. Haggins, 286 Ala. 409, 240 So.2d 660. On the other hand this court has consistently applied the doctrine in suits involving conveyances to defraud creditors, where the creditor was not a party to the suit and the suit was brought by the grantor to vacate the transfer he had fraudulently made to the respondent.

■ In Baird v. Howison, 154 Ala. 359, 45 So. 668, this court affirmed a decree wherein the trial court had denied relief to a grantor suing his grantee seeking to set aside a conveyance in fraud of creditors who were not parties to the suit. The following statement perhaps explains the refusal of equity to aid a party when he is in pari delicto with the respondent and the conveyance is in contravention of a statute and public policy, to wit:

". . . The transfer having been made for a fraudulent purpose, and the fraud having been participated in by both parties, a court of equity will leave them to the consequences of their misdeeds. . . . And again the court says: 'A very numerous class of cases within the same equitable doctrine is where the contract or other act is substantially a fraud upon the rights, interests, or intentions of third persons. In a case of this kind relief is refused to a plaintiff on the ground that he does not come into court with clean hands. The general rule is that parties to a contract must act, not only bona fide between themselves, but that they shall not act mala fide in respect to other persons who stand in such relation to either as to be affected by the contract or its consequences.' Barnes v. Starr, *supra* [64 Conn. 136, 28 A. 980]; Pom.Eq. § 881; Lord Hardwicke, in Chesterfield v. Jansen, 2 Ves.Sr. 156-157. Says the court in the case of Clemens v. Clemens, 28 Wis. 637, 9 Am.Rep. 531: 'The principle or policy of the law, therefore, is to reject the suit of and reprove the plaintiff for his wrong, not to reward the defendant. The plaintiff must be punished, even though it may be at the expense of allowing the defendant, an equally guilty party, to obtain most unjust and unfair advantage for himself. The suit of the party, compelled to seek the aid of the court in order to obtain the fruits of his own fraud or wrong, must be dismissed, although it may result in unjustly giving to the other equally culpable party the entire benefit of them.' " (154 Ala. at 365, 366, 367, 45 So. at 670)

In Rust v. Gillespie, 90 Okl. 59, 216 P. 480, plaintiffs sought to cancel deeds and recover title to land under a claim derived from an ancestor who had been a party to a transaction in 1893 whereby a homestead in the Cherokee Strip had been conveyed by warranty deed to a grantee, under an agreement whereby the grantee was to hold title in trust for his father-in-law who had paid the entire consideration for the deed. The father-in-law already owned 160 acres of land. The homestead laws denied to a party who already owned 160 acres of land the right to file upon a homestead, and the agreement was made for the purpose of defrauding the government by enabling the father-in-law to procure a homestead in Cherokee Strip. The court held that the claim of plaintiffs grew out of a fraudulent agreement violative of public policy and denied relief. The court said:

"The familiar maxim, 'He who comes into equity must come with clean hands', which, expressed in different form, 'He that committeth iniquity shall not have equity,' is recognized as a fundamental principle of equity jurisprudence which governs the discretionary powers of courts of equity in the exercise of their remedial functions and furnishes a universal rule affecting their entire administrations as to remedies and remedial rights. See notes to Medford v. Levy, 31 W.Va. 649, 8 S.E. 302, 2 L.R.A. 368; also 1 Pomeroy, Equity Jurisprudence, 434; 21 C.J. 180; 16 Cyc. 144; 10 R.C. L. 389, par. 139. Plaintiffs cannot be said to have come into court with clean hands nor to have been sufficiently

washed of iniquity. As stated above, plaintiffs' alleged right grew out of a wrong, a fraudulent agreement to which the party through whom they claim was a wrongdoer. It has been held that a right cannot arise to any one out of his own wrong, and that where both are clearly in the wrong, defendant holds the stronger ground. (21 C.J. 183, § 164) ; also that equity will not aid persons to get relief from situations which result from conveyance of their property in fraud of third persons, and not only is a fraudulent debtor denied relief, but also his fraudulent grantee when he comes into equity to assert his claim. Equity will refuse aid to either party where both are participants in a fraudulent transaction. 21 C.J. 184, § 167; 10 R.C. L. 353, § 102; Elliot on Contracts, § 657 to 660 inc.; 16 Cyc. 145, also 6 Cyc. 287.

"The above principles are invariably applied where parties attempt to enforce alleged rights growing out of a fraudulent agreement as to public lands. Beck v. Flourney Live Stock, (8 Cir.), 65 F. 30, 12 C.C.A. 497; Evans v. Folsom, 5 Minn. 422 (Gil. 342); American Association v. Innis, 109 Ky. 595, 60 S.W. 388; Cothran v. McCoy, 33 Ala. 65; Dial v. Hair, 18 Ala. 798, 54 Am.Dec. 179.

"Under said maxim, 'He who comes into equity must come with clean hands,' equity will not lend its aid in any manner to one who has been guilty of unlawful or unequitable conduct in a transaction from which he seeks relief, nor to one who has been a participant in a transaction the purpose of which was to defraud a third person, to defraud creditors, to defraud the government, nor to a party to a transaction whose purpose is violative of public policy. Richardson v. Walton, (C.C.), 49 F. 888; Farley v. St. Paul R. Co., (C.C.), 14 F. 114; Creath v. Sims, 5 How. 192, (46 U.S. 192), 12 L.Ed. 111. Also 16 Cyc. 144–145; 19 Cent.Dig. Title, Equity, §§ 185–187.

"The maxim is also applied not only to the participants in the transaction, but to their heirs and to all parties claiming under or through either of them. 10 R.C. L. § 102, page 354; McClintock v. Loisseau, 31 W.Va. 865, 8 S.E. 612, 2 L.R.A. 816, and notes." (90 Okl. at 62, 63, 216 P. at 483)

The courts of three states have dealt with transactions where one not a veteran sought veterans benefits.

In Perkins v. Hilton, 329 Mass. 291, 107 N.E.2d 822, 33 A.L.R.2d 1281, the trustee of a bankrupt veteran sued the veteran's mother to obtain realty the veteran had conveyed to the mother at a time when she knew he was insolvent. Title to the property had been taken in the veteran's name under a V. A. insured loan with an oral agreement that he was to hold the property in trust for the mother. She paid all expenses in connection with the loan, payment on the mortgage, etc. The Supreme Judicial Court of Massachusetts held the oral trust void, saying inter alia:

". . . But we think no credit can be allowed for payments made before the conveyance to Mrs. Hilton, since before that conveyance she had no interest in the property, legal or equitable, except under color of an oral trust which we feel compelled to hold illegal and invalid. She was then a mere volunteer as to her son's property. . . ." (329 Mass. at 296, 107 N.E.2d at 824, 33 A.L.R.2d at 1285)

In Glosser v. Powers, supra, plaintiff sought specific performance of an agreement whereby a veteran, the defendant, agreed to convey property to plaintiff, subject to a "security deed." Plaintiff had furnished down payment and paid expenses of making a loan, as per the agreement, but defendant refused to make conveyance and asserted that the agreement was an attempt on part of plaintiff to obtain benefits accorded veterans to which plaintiff was not entitled and to defraud the United

States contrary to law and public policy. The court said:

"(a) This plea of the defendant stated a valid defense to the petition, for 'Contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent cannot be made the ground of a successful suit.' Robinson v. Reynolds, 194 Ga. 324, 21 S.E.2d 214, 215. The trial court erred in dismissing this amendment to the defendant's answer.

"6. Since, under the undisputed testimony of the plaintiff, it appears that the contract sought to be enforced by her was in effect a transfer and assignment to her by the defendant of his rights as a veteran to the benefits provided under the Servicemen's Readjustment Act of 1944, supra to aid him in the establishment of a home, which is expressly prohibited by the act itself, and that under the contract sought to be enforced, all that the defendant would receive by virtue thereof would be the right, upon payment of an agreed rental, to occupy an apartment in the house as a tenant at will or sufferance of the plaintiff, the evidence demanded a verdict for the defendant, and the trial court erred in overruling the defendant's motion for a new trial complaining of the verdict in favor of the plaintiff. See Licznerski v. United States, 3 Cir., 180 F.2d 862." (71 S.E.2d at 232)

The Supreme Court of New York, Appellate Division, held invalid an agreement whereby a veteran was to obtain a V. A. mortgage and purchase home in his name, and his parents were to pay all carrying charges and the property would be theirs. The court said:

" . . . The complaint alleges, in substance, that appellants are respondent's parents, that appellants wished to purchase the home in which the parties resided but were financially unable to do so, that they agreed with respondent, a veteran, that he would obtain a mortgage loan guaranteed by the Veterans' Administration and purchase the premises in his name and that they would pay all the carrying charges thereon and in effect the property would be theirs, that the agreement was consummated and appellants have treated the premises as their own, and that respondent has refused to convey the property to them pursuant to the agreement. The relief sought includes a declaration that respondent holds the premises in trust for appellants and a demand for conveyance of the property to them.

" .  .  .

"In our opinion the transaction alleged in the complaint was illegal and invalid. It was an attempt to obtain for appellants the special benefits of the Servicemen's Readjustment Act of 1944, U.S. Code, tit. 38, § 693 et seq., to which only veterans themselves are entitled and was, therefore, void and unenforcible as against public policy. Cf. Perkins v. Hilton, 329 Mass. 291, 107 N.E.2d 822, 33 A.L.R.2d 1281; Glosser v. Powers, 209 Ga. 149, 71 S.E.2d 230; Karrell v. United States, 9 Cir., 181 F.2d 981, certiorari denied 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646; U.S.Code, tit. 38, §§ 454a, 694a, 715; see, also, Flegenheimer v. Brogan, 284 N.Y. 268, 272–273, 30 N.E. 2d 591, 592, 593, 132 A.L.R. 613; O'Connor v. O'Connor, 263 App.Div. 820, 31 N.Y.S.2d 372, affirmed 288 N.Y. 579, 42 N.E.2d 26." Dunn v. Dunn, 1 A.D.2d 888, 149 N.Y.S.2d 351, 352.

In the instant case, complainant admittedly seeks to obtain title by a resulting trust arising out of a transaction based on an alleged agreement which violates the statute and contravenes public policy. Equity will not aid him under the authorities cited, and the decree awarding him relief is due to be and is reversed.

Reversed and remanded.

All Justices concur.

HEFLIN, Chief Justice (concurring):

I concur with the opinion in this case. If on remandment the trial court feels that the facts justify a balancing of equities, the cases of Towner v. Berg, 5 A.D.2d 481, 172 N.Y.S.2d 258 (1958), and Hainey v. Narigon, 247 Cal.App.2d 528, 55 Cal.Rptr. 638 (1966), may provide an approach to follow.

JONES, J., concurs.