CRAWLEY, Judge,
concurring in part and dissenting in part.
I agree that “the interests of the child are our paramount concern” and that the father has a duty to support the child. However, I believe the unusual circumstances of this case would warrant a deviation from the child support guidelines of Rule 32, Ala. R. Jud. Admin, because the application of the guidelines would be unjust or inappropriate.
The father requested a deviation. After the paternity determination, he requested a hearing on the issues of child support and visitation. The trial court granted the request, and during the hearing, the testimony set out in the main opinion was heard. The father, in his trial brief, requested “that this Court, acting in equity, ... abate any child support payments due to [the mother] because of her sexual assault on [the father].” The trial court denied the father’s request for a credit or setoff and stated that in determining the amount of the child support it applied the guidelines in Rule 32. Although the father did not refer to Rule 32(A) in requesting an abatement of child support, the trial court understood it as a request for deviation from the guidelines and applied Rule 32. Under notice pleading, the pleadings and brief of the father were sufficient to put the mother on notice that the father was requesting this equitable relief. Ballew v. Charter Realty ERA, 603 So.2d 877 (Ala.1992).
“In cases involving child support, the Court is not bound by any strict rules of pleading or procedure, ... and the paramount consideration is the welfare of the children.”
Ex parte Boley, 392 So.2d 840, 842 (Ala.1981) (citations omitted).
In addition to the facts stated in the main opinion, the father testified that when he woke up that morning with only his shirt on that “she told me she couldn’t get that completely off of me.” Kimmy Hovater and Johnny Stonecipher testified that the mother told each of them that she and the father had had sex and “he wasn’t even aware of it.” S.F.’s brother testified that when he left the mother’s home between 6:00 a.m. and 7:00 *1191 a.m. the father still had his clothes on. The father testified that he was 37 years old, never wanted to have any children, and had always taken precautions not to have children. Strangely, during the cross-examination of Dr. Layton, the state asked if, in her opinion, a male could unknowingly, while passed out, “do it three times the same night?” She answered yes. This strongly implies that the state was trying to negate expected testimony that the mother had had sex with the father three times.
The state called the mother “for the limited purpose of getting information about her income,” which is all she testified about. The state offered no evidence to rebut any of the father’s evidence. Thus, the father’s evidence that he did not know about, nor consent to, sexual intercourse with the mother is undisputed. Where the facts are not in dispute, no presumption of correctness attaches to the court’s determination, and the inquiry is limited to whether the relevant law was correctly applied to the undisputed facts. State Comptroller v. First Alabama Bank, 642 So.2d 1349 (Ala.Civ.App.1993).
“[She] who comes into equity must come with clean hands is one of the recognized maxims in equity. We think it is applicable here. This question is not raised in brief, but the maxim of unclean hands may be applied by the court sua sponte whether the question was raised in the lower court or not.”
Malone v. State ex rel. Gallion, 285 Ala. 493, 497, 234 So.2d 32, 35 (1970) (citations omitted). The mother’s sexual misconduct is reprehensible and is a misdemeanor. § 13A-6-65(a)(2), Ala.Code 1975. Because of the mother’s inappropriate conduct, the trial court should have deviated from the guidelines.
In Matthews v. Matthews, 292 Ala. 1, 288 So.2d 110 (1973), our supreme court denied equitable relief to a complainant who “admittedly [sought] to obtain title by a resulting trust arising out of a transaction based on an alleged agreement which violates the statute and contravenes public policy. Equity will not aid him under the authorities cited, and the decree awarding him relief is due to be and is reversed.” 288 So.2d at 121. Unlike the complainant in Matthews, the child in this case is a ward of the court. The child’s best interest is paramount. We cannot, without consideration of the mother’s ability to support the child, deny her all relief requested. “[T]he child is the party with whom the courts are most concerned, and a court of equity will protect and look after the child as a ward of the court.” Skipper v. Skipper, 283 Ala. 286, 215 So.2d 885, 886 (1968).
Although the trial court denied the father’s motion to abate payment of child support despite the mother’s misconduct, it could not have considered the principles set forth herein, because they are of first impression in this state. Therefore, I would reverse and instruct the trial court to allot as much of the monthly child support to the mother insofar as her earning ability would allow. The trial court should order the father to support the child only to the extent that the mother’s earning ability was insufficient to support the child.
The mother’s monthly gross income is $1,250, and the father’s is $2,655. The basic child support obligation is $534. Whether the mother’s income or her ability to earn additional income is sufficient to be the sole support of the child is within the trial court’s discretion. The mother’s ingenuity[1] strongly indicates her ability to earn an adequate living for herself and her child. The trial court should be generous in imputing income to the mother. Those who acknowledge President George Washington as the “father of our country” can breathe a sigh of relief that this licentious opportunist did not fall into Rip Van Winkle’s forest bed.
The main opinion states that the father’s constitutional argument that a person’s duty to support a child flows from his voluntary parenthood was waived because it was not made to the trial court. I disagree. With the court’s consent prior to taking testimony, the father’s attorney addressed the father’s Fourteenth Amendment right to due process *1192 on the basis that the father did not knowingly and willfully participate in any sexual activity with the mother. The trial court then stated that it would allow the father’s testimony regarding the father’s due process constitutional right. However, I do not consider that argument appropriate because, if successful, the child’s source of support from the father would be eliminated. The father’s duty of support to his child, even in this situation, requires him to support the child rather than allow the child to depend on public support. “[A]ll minor children have a fundamental right to parental support.” Ex parte State of Alabama ex rel. Carolyn Sum-merlin, 634 So.2d 539, 540 (Ala.1993).

. Before the father withdrew his request for a jury trial, the mother filed a motion in limine to prohibit the father’s introduction of evidence that the mother attended a party dressed as a condom; again, strongly implying the state anticipated such testimony.